STATE OF HAWAII, Plaintiff-Appellee, *v.* HENRY JAMES HUIHUI III, Defendant-Appellant

NO. 6819

JUNE 10, 1980

RICHARDSON, C.J., OGATA, MENOR, JJ.,
RETIRED JUSTICE KOBAYASHI AND CIRCUIT JUDGE LUM,
ASSIGNED BY REASON OF VACANCIES

*Per Curiam.* Defendant-appellant Henry James Huihui, III, was convicted of two counts[1] of robbery in the first degree[2] by a jury.

The robberies occurred at the Zeus Lounge on June 23, 1977 and involved three separate victims, Jane Tsubota, Carol Morton and Ok-Yea Yi, all employees of the Lounge. Besides the victims, two other persons were present at the scene and witnessed the crime. They were Su-Pok Yamamoto, another employee of the Lounge, and Hiroshi

---

[1] Defendant was originally charged with three counts, but at the close of the State's case, the court dismissed one count involving the victim Ok-Yea Yi, finding an absence of any threat against her.

[2] HRS § 708-840.

Kobayashi, a bystander who saw the assailant in flight outside of the Lounge.

During trial, all three victims and Yamamoto, called by the State, were unable to make an in-court identification of the defendant. As it later turned out, the only in-court identification was made by Kobayashi, but he admitted he was only "eighty per cent sure."[3]

The State was then left to bolster the identification element by introducing evidence of pre-trial identifications of defendant made by their witnesses. These pre-trial identifications were part of a photo lineup conducted by Detective Ralph Irvine on July 6, 1977. According to Detective Irvine, all of the witnesses picked out the photo of defendant from a group of photos, identified the defendant as the assailant, and made the following statements in connection therewith:

Tsubota: "This is him."

Morton: "This is the individual that came into the bar. . . ."

Yamamoto: "That was the person but [*sic*] looked like him. . . ."

---

[3] Q. Would you be able to recognize him if you were to see him again?
A. Almost.
Q. Well, when you say "almost", — well, first of all, would you take a look around the courtroom and see if you recognize anybody?
A. Yes.
Q. Would you point him out?
(Whereupon, witness indicated by pointing to the defendant.)
MR. YAMAMOTO: Your Honor, may the record reflect the witness is pointing to the defendant?
THE COURT: Yes.
Q. (By Mr. Yamamoto) You said "almost". What do you mean by almost?
A. Well, I have little doubt in my mind.
Q. Do you have a doubt in your mind?
A. Little.
Q. Little?
A. Yes.
Q. Well, from one to one hundred, where would you place yourself?
A. About —
Q. Wait a minute. One being a lot of doubt and one hundred being no doubt at all; where would you place —
A. About 80.

However, the colloquy between the State prosecutor and each of the witnesses during direct examination leaves a totally different impression.

Morton —

A. Oh, I told him (detective), "Looks like him, because I no remember too good, but looks like him. But I don't know," I told him.

Yi —

Q. Did you pick out one of the photographs?

A. Because I saw him on the side view, I wasn't able to pick, and I told him (detective) I won't be able to do it.

Yamamoto —

Q. Did Detective Irvine ask you how sure you were? Did he ask you, "Are you sure?"

A. I said almost to [sic] sure.

Q. Almost, but not positive?

A. Yes.

Tsubota —

A. I told him (detective), "Maybe look like him but I'm not sure."

What we are now concerned with involves the use of the words "police mug photographs" heard by the jury. When Tsubota was being examined by the prosecutor concerning her participation in the pre-trial identification of defendant, a question asked by the prosecutor contained the words "police mug photographs."[4] The defense objection to the reference

---

[4] Q. (by Mr. Yamamoto) Now, Mrs. Tsubota, on the last page, on the third page, after you read this statement did you sign your name on the bottom?
A. Yes.
Q. Put your address?
A. Yes.
Q. And everything on?
A. Yes.
Q. And then Detective Irvine signed it on the bottom?
A. Yes.
Q. Would you read this paragraph, please, to yourself?
(Whereupon, witness read the document.)
A. Yes.
Q. Okay. That paragraph reads: "At 4:40 p.m., 7-6-77, Wednesday, I was shown a group of 8 individual police mug photographs."

of the word "mug" was overruled by the court and no prophylactic instruction was ever given.

WHETHER THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S OBJECTION TO THE STATE'S REFERENCE TO POLICE MUG PHOTOGRAPHS, AND, IF SO, WHETHER THE ERROR WAS PREJUDICIAL.

. We agree with the defendant's contention that the words "police mug photographs" used in a question asked by the State of one of its witnesses in reference to defendant's identity reasonably inferred to the jury that defendant had been previously routed through the arrest process as a suspect of other crimes and suggests to the jury that defendant has a prior criminal record. The prosecutor's action may have been inadvertent, but that fact does not detract from the improper reference communicated to the jury, and it was error for the trial court not to have sustained the objection and follow it with a prophylactic instruction.

As the reviewing court, can we conclude, from the record as a whole, that the error was harmless beyond a reasonable doubt? *State v. Pokini*, 57 Haw. 26, 548 P.2d 1402 (1976), *cert. denied*, 429 U.S. 963 (1976). Error is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes, whether there is a reasonable possibility that the error might have contributed to the conviction. *Id.* at 34, 548 P.2d at 1407.

Turning to the State's evidence, we find that the State was unable to provide an in-court identification from all of its

---

MRS. MILKS: Your Honor, at this time may we approach the bench?
THE COURT:. Yes.
(Whereupon, bench conference had, outside the hearing of the jury.)
MRS. MILKS: Your Honor, prosecutor's reference to the word "mug", we object to the word. The jury can infer from that comment made by the prosecutor that he's a known criminal, that he at least is known to the police.
THE COURT: Overruled.

witnesses, except through Kobayashi, but his in-court iden-
tification was weakened by his admission that he was only "80
per cent sure." The testimony of Detective Irvine relative to
statements made by the State's witnesses in connection with
their pre-trial identifications of defendant during the photo
lineup was not corroborated by the witnesses at all. The
State's evidence, in regard to defendant's identification, may
therefore be characterized as being flimsy.

Under these circumstances, we find that the error raised a
reasonable possibility of having contributed to the conviction;
we cannot say that it was harmless beyond a reasonable
doubt. *State v. Kahinu*, 53 Haw. 536, 498 P.2d 635 (1972),
*cert. denied*, 409 U.S. 1126 (1973); *State v. Amorin*, 61 Haw.
356, 604 P.2d 45 (1979).

Reversed.

*Marie N. Milks*, Deputy Public Defender, for defendant-
appellant.

*Arthur Ross (Keith M. Kaneshiro* on the brief), Deputy
Prosecuting Attorneys, for plaintiff-appellee.