STATE OF HAWAII, Plaintiff-Appellee, *v.* ELLEN M. MIYAZAKI, Defendant-Appellant

NO. 8034

CRIMINAL NO. 53069

MAY 27, 1982

RICHARDSON, C.J., LUM, NAKAMURA, PADGETT AND HAYASHI, JJ.

OPINION OF THE COURT BY HAYASHI, J.

Appellant Ellen M. Miyazaki (hereinafter appellant) appeals from her conviction on two counts of forgery in the second degree entered against her on August 5, 1980. She contends that several resersible errors occurred in her prosecution for the afore-mentioned offenses.

On the morning of May 4, 1979, the appellant entered the main branch of American Security Bank in Honolulu and presented a check for $175 to the bank teller. The check bearing the name of Nancy D. Omi (hereinafter Ms. Omi or victim) was accepted by the teller and the money was given to the appellant. Three days later, the appellant again entered the bank and cashed with a different teller a check bearing the name of Ms. Omi, this time in the amount of $150.

It was established at trial that the two checks had been drawn on the account of the victim without her permission and that the checks were cashed out of their numerical sequence. It was also established that the signatures appearing on the checks were not executed by the victim.

At trial, testimony was adduced which showed that the appellant and Ms. Omi were both employees at the main branch of American Security Bank. It was further adduced that they had on occasion

eaten lunch and gone shopping together. In fact, on the evening of May 3, 1979, the night before the first check was cashed, the appellant and the victim had gone shopping together at the Ala Moana Shopping Center. During this shopping trip, the victim at one point asked the appellant to hold her purse while she was trying on some clothing. The victim did not see the appellant take any checks from that purse.

During May of 1979, the bank conducted an internal audit of the appellant involving the forged checks. After meeting with the chief auditor on May 8, 1979, the appellant never returned to work at the bank. Efforts by the bank to subsequently contact the appellant were futile.

On June 27, 1979, the appellant was indicted by the Oahu Grand Jury on two counts of forgery in the second degree, in violation of Hawaii Revised Statutes (HRS) § 708-852.[1] These indictments were handed down after hearsay testimony was heard at the grand jury hearing. This testimony was heard because the victim was then residing in California and was not available at the time of the hearing.

On August 23, 1979, the appellant filed a motion to quash indictment, arguing *inter alia*, that there had been an impermissible use of hearsay at the grand jury hearing. A hearing on that motion was heard before the Honorable Toshimi Sodetani on September 19, 1979. At that hearing, Judge Sodetani denied the motion after finding that there was no evidence adduced to show that the hearsay testimony was deliberately used in place of the victim's testimony or that the hearsay testimony did not accurately reflect her signed statement.

Jury trial began on February 19, 1980. After a jury was empaneled and sworn in, the appellee moved to nolle prosequi Count

---

[1] HRS § 708-852 provides:

*Forgery in the second degree.* (1) A person commits the offense of forgery in the second degree if, with intent to defraud, he falsely makes, completes, or alters a written instrument, or utters a forged instrument, which is or purports to be, or which is calculated to become or to represent if completed, a deed, will, codicil, contract, assignment, commercial instrument, or other instrument which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status.

(2) Forgery in the second degree is a class C felony.

II of the indictment because of the unavailability of a crucial state witness. Counsel for the appellant expressed no objection to that motion and it was granted. After a trial was held on Count I, the jury was not able to reach a verdict and a mistrial was declared.

On March 25, 1980, the appellant was reindicted on two counts of forgery in the second degree. Having nolle prosequied Count II at the first trial, the second indictment count was renumbered Count III. The appellant made no objection on double jeopardy grounds, nor did she make any motion to dismiss the indictment.

On March 16, 1980, the State filed a motion to consolidate Counts I and III. The trial judge granted the motion, reasoning that the two incidents appeared to arise out of the same conduct and that the witnesses would be substantially the same for both counts.

Trial was finally held on August 5, 1980. At that trial, prosecution witness David McCoy, the bank's chief auditor, made a reference on cross-examination to his testimony at a prior trial involving the appellant. Appellant's counsel at this point immediately moved for a mistrial, alleging that insurmountable prejudice had occurred. The trial judge denied the motion, stating that a cautionary instruction to the jury to disregard that reference would be made. The appellant was convicted on both counts.

Appellant first argues that the trial judge abused his discretion when he refused to dismiss the indictment after learning that hearsay was used at the grand jury proceeding. She argues that the testimony of Honolulu Police Department Detective Wayne Fergerstrom regarding the conversation he had with the victim, Nancy D. Omi, was an impermissible use of hearsay because the appellee made no effort to secure the attendance of the victim despite having knowledge of her whereabouts.

During the grand jury proceedings of June 27, 1979, the following exchange occurred between the prosecutor and Detective Fergerstrom:

Q. What did Nancy D. Omi tell you about those checks?

A. She said the signature and the checks were forgeries, and she did not allow anyone to sign her name or cash her checks.

Q. Did she authorize anyone to cash the checks?

A. No, sir.

Q. Did she say whether she knew Ellen Miyazaki?

A. Yes, sir.

Q. Did she know Ellen Miyazaki?

A. Yes, sir. She knows her as a good friend.

Q. Did Ellen Miyazaki have permission to cash those checks?

A. No, sir.

The victim, Nancy D. Omi, did not testify at the grand jury proceeding.

We address this issue by first reviewing this court's prior decisions involving the use of hearsay at grand jury proceedings. In *State v. Layton,* 53 Haw. 573, 575, 497 P.2d 559, 561 (1972), we established the general proposition that hearsay evidence before the grand jury should only be used in exceptional circumstances. We defined "exceptional circumstances" as existing when "it is demonstrably inconvenient to summon witnesses able to testify from personal knowledge." However, later, in *State v. Murphy,* 59 Haw. 1, 575 P.2d 448 (1978), we noted that the rule enunciated in *Layton* was not a hard and fast one, but merely an expression of policy. 59 Haw. at 5-6, 575 P.2d at 453. Instead, we announced in *Murphy* the presently applicable rule which states that "where the hearsay testimony was not used deliberately in the place of better evidence to improve the case for an indictment, dismissal of the indictment is not required." *Id.* at 6, 575 P.2d at 453. We most recently affirmed the *Murphy* rule in *State v. O'Daniel,* 62 Haw. 518, 522-23, 616 P.2d 1383, 1388-89 (1980).

In the present case, the trial judge, after a hearing on the appellant's motion to quash indictment, ruled that:

> [I]n this case, the [hearsay] testimony was presented by the prosecution because the declarant was not in Hawaii and was not available at the time this matter came before the grand jury. There is no evidence to indicate that the hearsay testimony of Detective Fergerstrom was presented deliberately in place of Nancy Omi's statement in the indictment nor is there any evidence to indicate that the hearsay testimony did not accurately reflect the declarant's statement.

In reviewing the record we find no reversible error. It is a basic rule in this jurisdiction that in proceedings determining the validity of an indictment, the State does not have the burden of proving that the alleged illegal or improer testimony is not prejudicial; it is the duty of the defendant to come forward and present a case proving prejudice. *State v. Scotland,* 58 Haw. 474, 477, 572 P.2d 497, 499 (1977). *See*

*State v. Melear,* 63 Haw. 488, 630 P.2d 619 (1981); *State v. Rodrigues,* 63 Haw. 412, 629 P.2d 1111 (1981); *State v. Pulawa,* 62 Haw. 209, 614 P.2d 373 (1980).

In the present case, the complaining witness was in California. Given that distance and no showing of inaccuracy having been made with respect to the hearsay testimony admitted, it was within the trial court's discretion to deny appellant's motion to quash the indictment.

The appellant's second contention is that she was denied her constitutional rights against being placed in jeopardy twice for the same offense.

We note initially that the appellant did not raise any double jeopardy claim until this appeal was filed. Normally, an issue not preserved at trial is deemed to be waived. However, as provided for in Rule 52 of the Hawaii Rules of Penal Procedure (HRPP), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." *See State v. Bunn,* 50 Haw. 351, 440 P.2d 528, 532 (1968). Moreover, we have previously held that a defendant's right to be free from double jeopardy is just such a substantial right as to be noticeable by the court. *State v. Martin,* 62 Haw. 364, 373, 616 P.2d 193, 199 (1980). For this reason, we review the appellant's double jeopardy argument.

The appellant argues that her right to be free from being placed in double jeopardy was violated when she was reindicted on Cout III after the prosecution had nolle prosequied Count II of the original indictment. She argues that jeopardy had attached on to Count II during the February 20, 1980, trial because the jury had been empaneled and sworn prior to the prosecution's nolle prosequi motion. The appellee answers that although jeopardy had been attached before the nolle prosequi motion, the appellant willingly consented to that motion at the first trial and thereafter waived her right to raise the defense. Furthermore, the appellee cites HRS § 701-110(4)(a) as authorizing the reprosecution of a defendant who consents to a termination of a prior trial.

The double jeopardy clauses of both the Hawaii and United States Constitutions provide: "[N]or shall any person be subject for the same offense to be twice placed in jeopardy of life and limb." In addition, statutory bars to the reprosecution of defendants are

found in HRS § 701-110. Thus, an analysis of a defendant's double jeopardy claim must usually consist of constitutional as well as statutory analysis. *State v. Martin, supra* at 373-74, 616 P.2d at 199.

In this case, however, we need not embark on a statutory analysis because the appellant concedes that HRS § 701-110(4)(a)[2] clearly authorizes reprosecution under the facts of this case.

The policy behind the double jeopardy clause was best described by the United States Supreme Court in *Green v. United States,* 355 U.S. 184, 187-88 (1957) in the following way:

> The underlying idea, one that is deeply ingrained in at least the Anglo-Saxon system of jurisprudence, is that the state with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense, and ordeal, and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

This court adopted this policy in *State v. Bannister,* 60 Haw. 658, 660-61, 594 P.2d 133, 135 (1979) and *State v. Pulawa,* 58 Haw. 377, 382, 569 P.2d 900, 905 (1977), *cert. denied,* 436 U.S. 925 (1978).

In examining double jeopardy claims, two inquiries must be made. The first involves a determination of when jeopardy attaches. The second involves an examination of the facts of the case to determine if a retrial is barred by the double jeopardy clause.

It is generally accepted that in jury trials, jeopardy attaches when the jury is empaneled and sworn. *Crist v. Bretz,* 437 U.S. 28, 35 (1978). *See State v. Martin, supra* at 374, 616 P.2d at 199 (1980). In this case, it is not disputed that the jury was empaneled and sworn in before the prosecution's nolle prosequi motion was made. Thus, it is clear that jeopardy had attached to the appellant's case.

The second inquiry we must make involves a consideration of the

---

[2] HRS § 701-110(4)(a) provides:

(4) The former prosecution was improperly terminated. Except as provided in this subsection, there is an improper termination of a prosecution if the termination is for reasons not amounting to an acquittal, and it takes place after the first witness is sworn but before verdict. Termination under any of the following circumstances is not improper:

(a) The defendant consents to the termination or waives, by motion to dismiss or otherwise, his right to object to the termination.

facts of this particular case because the protections of the double jeopardy clause are not absolute. For example, there are a number of cases holding that certain actions by defendants can be deemed to constitute waiver of double jeopardy rights. In *State v. Pulawa, supra,* we held that "[w]here the defendant consents to a declaration of mistrial, even though the consent is necessitated by judicial or prosecutorial error, the barrier to reprosecution is ordinarily removed." 58 Haw. at 382, 569 P.2d at 904. We qualified that holding by stating that "where the defendant's mistrial motion is the necessary response to judicial or prosecutorial misconduct designed to avoid an acquittal, or is necessitated by deliberate misconduct which has for its intended purpose the denial of the defendant's constitutional right to a fair trial, reprosecution will be barred." *Id.* at 382, 569 P.2d at 905.

The *Pulawa* rule that double jeopardy rights can be deemed waived whenever a defendant consents to a prosecution mistrial motion is based on decisions of the United States Supreme Court in *Lee v. United States,* 432 U.S. 23 (1977); *United States v. Dinitz,* 424 U.S. 600 (1976); and *United States v. Jorn,* 400 U.S. 470 (1971) and is a rule that has been applied in other jurisdictions. *See Holt v. Wyrick,* 649 F.2d 543, 551 (8th Cir. 1981); *Cherry v. Director, State Board of Corrections,* 635 F.2d 414, 417 (5th Cir. 1981); *Mitchell v. Smith,* 633 F.2d 1009, 1011 (2d Cir. 1980), *cert. denied,* 449 U.S. 1088 (1981); *Stevenson v. State,* 404 So.2d 111, 114 (Ala. Crim. App. 1981); *People v. Hathcock,* 8 Cal.3d 599, 613-14, 504 P.2d 476, 485 (1973); and *People v. Benton,* 402 Mich. 47, 54, 260 N.W.2d 77, 79 (1977).

Of nearly universal application is the rule that double jeopardy rights are deemed waived when a defendant successfully moves for a mistrial. All of the federal circuit courts and thirty-three states have decided cases utilizing this rule. *See* Annot., 98 A.L.R.3d 997 (1980) for citations to the numerous decisions on this point.

Other examples of cases where waiver has been found include those where the defendant failed to raise a double jeopardy claim at trial,[3] or in a timely manner;[4] where a defendant pleaded no contest

---

[3] *United States v. Perez,* 565 F.2d 1227, 1232 (2d Cir. 1977); *United States v. Scott,* 464 F.2d 832, 833 (D.C. Cir. 1972); *United States v. Buonomo,* 441 F.2d 922, 924 (7th Cir.), *cert. denied,* 404 U.S. 845 (1971); *Grogan v. United States,* 394 F.2d 287, 289 (5th Cir. 1967), *cert. denied,* 393 U.S. 830 (1968); *Haddad v. United States,* 349 F.2d 511, 514 (9th

to a criminal charge;[5] where a defendant sought a continuance at trial;[6] where a defendant chose to oppose prosecution's motion to consolidate;[7] and when a defendant sought a new trial after being convicted.[8]

These waiver cases underscore the necessity of examining the particular facts of a case in determining whether waiver of a defendant's double jeopardy right has occurred. *See Illinois v. Somerville,* 410 U.S. 458, 464 (1973).

In this case, the following factors lead us to the conclusion that the appellant has waived her double jeopardy rights.

We note first that the appellant failed to raise any double jeopardy objection at any time before this appeal, despite having numerous opportunities to do so. A timely objection could certainly have been made sometime during the four-and-a-half-month period between the reindictment and appellant's second trial. Equally clear is the fact that a timely objection could have been interposed before or during that second trial when the appellant's double jeopardy rights were actually being affected.

Second, we note that the appellant consented to the prosecution's nolle prosequi motion. This consent was necessary because jeopardy had attached to that trial because the jury had been empaneled and sworn. Under HRPP Rule 48(a), a dismissal by the prosecutor "may not be filed during the trial without the consent of

Cir.), *cert. denied,* 382 U.S. 896 (1965); *Ferina v. United States,* 340 F.2d 837, 838-39 (8th Cir.), *cert. denied,* 381 U.S. 902 (1965); *Barker v. Ohio,* 328 F.2d 582, 584 (6th Cir. 1964); *Drakes v. State,* 400 So.2d 487 (Fla. Dist. Ct. App. 1981); *Hooks v. State,* 138 Ga. App. 539, 540, 226 S.E.2d 765, 766 (1976); *Carbonneau v. Warden of Nevada State Prison,* 634 P.2d 1197, 1198 (Nev. 1981); *People v. LaRuffa,* 37 N.Y.2d 58, 60, 371 N.Y.S.2d 434, 435-36, 332 N.E.2d 312, 313 (Ct. App. 1975); *State v. McKenzie,* 292 N.C. 170, 176-77, 232 N.E.2d 424, 428 (1977).

[4] *Lutes v. State,* 401 N.E.2d 671, 673 (Ind. 1980); *Commonwealth v. Peters,* 473 Pa. 72, 76, 373 A.2d 1055, 1057 (1977); *State v. Reis,* 430 A.2d 749, 754 (R.I. 1981).

[5] *State v. Owens,* 127 Ariz. 252, 253, 619 P.2d 761, 762 (Ct. App. 1980).

[6] *Adkins v. Bordenkircher,* 517 F. Supp. 390, 400-401 (S.D.W. Va. 1981); *Adkins v. Leverette,* 264 S.E.2d 154, 156-57 (W. Va. 1980).

[7] *State v. Shields,* 280 Or. 471, 475-76, 571 P.2d 892, 894 (1977).

[8] *Koch v. State,* 401 So.2d 796, 799 (Ala. Crim. App.), *cert. denied,* 401 So.2d 801 (1981).

the defendant." Without her consent, the nolle prosequi motion could not have been otherwise legally granted.[9]

Third, we have scrutinized the record, and we conclude that the prosecutor acted in good faith in seeking to nolle prosequi Count II of the original indictment and in seeking to consolidate Counts I and III for the second trial. Careful consideration of the action of the prosecutor is essential because as we stated in *State v. Pulawa, supra,* judicial or prosecutorial misconduct which is designed to deny the defendant's constitutional rights to a fair trial will bar reprosecution. 58 Haw. at 382, 569 P.2d at 905.

Here, the prosecutor represented to the court that a crucial witness was unavailable at the time of the first trial; that the witness' whereabouts was unknown; and that he had made repeated attempts to contact that witness but had been unsuccessful. Furthermore, the prosecutor stated in court that he felt that the nolle prosequi of Count II was ethically preferable to filing a motion for continuance.

As for the prosecutor's motion to consolidate, the record indicates that it was filed for reasons of judicial economy and because the two charged counts involved similar factual circumstances, conduct, and witnesses. These are legitimate prosecutorial concerns which do not indicate that the prosecutor intended to deprive the appellant of her constitutional double jeopardy rights.

Under these factual circumstances, we find that the appellant waived her double jeopardy rights and, therefore, was properly triable on Count III of the amended indictment.[10] We emphasize that this court will not find waiver of constitutional rights readily but will carefully scrutinize facts of a case to determine if waiver has occurred.

---

[9] *See, e.g., United States v. Arzate,* 545 F.2d 481 (5th Cir. 1977); *United States v. Chase,* 372 F.2d 453, 463-64 (4th Cir.), *cert. denied,* 387 U.S. 907 (1967); *Woodring v. United States,* 311 F.2d 417, 424 (8th Cir.), *cert. denied,* 373 U.S. 913 (1963); *Boone v. State,* 3 Md. App. 119, 125-26, 237 A.2d 787 (Ct. Spec. App.), *cert. denied,* 393 U.S. 872 (1968). *Accord United States v. Delagarza,* 650 F.2d 1166, 1167 (10th Cir.), *cert. denied,* 452 U.S. 917 (1981).

[10] A defendant's waiver of the right to have an issue heard on appeal differs substantially from a defendant's waiver of a substantive constitutional or statutory right. We hold in this case that while we do not find that the appellant waived her right to be heard as to her double jeopardy claim, her actions did constitute a waiver of her double jeopardy rights.

Appellant's third point on appeal involves the testimony of one of the prosecution witnesses at the second trial. David McCoy, the bank's chief auditor, was called on at the trial to testify about the internal bank investigation of the appellant. On cross-examination by defense counsel, the following exchange took place:

Q. And you also in the course of your investigation talked to Nancy Omi, is that right?

A. Yes, I did.

Q. And you originally talked to her on May 8th, is that right?

A. To be honest with you, it's been so long since this took place — I could pull out memos and refresh my memory on it.

I believe I testified at an earlier trial —

At this point, the defense counsel interceded and moved for a mistrial based on the witness' statement.

Appellant argues that this statement impaired her right to a fair trial and cites *State v. Kahinu,* 53 Haw. 536, 498 P.2d 635, *cert. denied,* 409 U.S. 1126 (1972) for that proposition. We do not feel that the witness' statement unfairly prejudiced the appellant. In *Kahinu,* this court stated the rule to be applied in determining if prejudice caused by the court's reference to a defendant's prior arrests, convictions, or imprisonment amount to reversible error as follows: " 'an error of constitutional proportions can be disregarded as harmless if the prosecution proves beyond a reasonable doubt that the error "did not contribute to the verdict obtained." ' " (Citing *Chapman v. California,* 386 U.S. 18, 24 (1967).) *Id.* at 550, 498 P.2d at 644.

In this case, the prosecution argues that the witness' statement did not amount to reversible error in view of the overwhelming evidence which was presented against the appellant at trial. Upon review of the record, we agree.

The trial transcript passage quoted above shows that the witness' statement was stopped at mid-sentence and did not contain any specific reference to the appellant or any other offense. Such a vague and indefinite reference to "an earlier trial" is not the type of statement that amounts to undue prejudice under the test adopted in *Kahinu. See also, State v. Pulawa,* 62 Haw. 209, 614 P.2d 373 (1980); *State v. Huihui,* 62 Haw. 142, 612 P.2d 115 (1980).

Furthermore, we note that the trial judge in this case issued an immediate cautionary instruction directing the jury to disregard the witness' statement. In *Kahinu,* we ruled that the trial court has the

authority to determine whether the challenged statement "merits a mere prophylactic cautionary instruction or the radical surgery of declaring a mistrial." 53 Haw. at 549-50, 498 P.2d at 644. Given the actual content of the challenged statement and the context of the testimony, we find the trial judge's cautionary instruction was more than adequate to cure any prejudice that the statement might have had on appellant's case.

Finally, we note that there was an overwhelming amount of incriminating evidence presented against the appellant at trial. Seven witnesses appeared for the prosecution, including the complainant, Ms. Omi, the two bank tellers who cashed the forged checks, and a handwriting expert who testified about the forged signatures. In addition, several prosecution exhibits were introduced into evidence at trial. Included in this group of exhibits were the checks that were found to have been forged by the appellant.

Under these circumstances, the prosecution has proven beyond a reasonable doubt that the witness' statement did not contribute to the verdict.

The appellant's final point of contention is that the trial judge's allowance of the charges to be consolidated prejudiced her right to a fair trial. She argues that the consolidation was prejudicial and should not have been allowed under HRPP Rule 14.[11] At the hearing on the motion for consolidation, counsel for the appellant argued that the consolidation would prejudice her because she would only be allowed to take the stand on only one of the two charged counts.

The appellee answers by arguing that the question on appeal is whether the trial court abused its discretion in granting the consolidation motion, and argues that the appellant failed to make an adequate showing of prejudice to convince the trial judge that the motion to consolidate should be denied.

In *State v. Matias*, 57 Haw. 96, 98, 550 P.2d 900, 902 (1976), this court stated the test to be applied when considering Rule 14 claims:

[T]he trial court is under a duty to balance possible prejudice to

---

[11] HRPP Rule 14 provides:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in a charge or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

the defendant from joinder with the public interest in efficient use of judicial time through joint trial of . . . offenses which are connected.

In this case, the trial court made the following ruling on appellee's motion.

On the motion to consolidate, it does appear that two incidents arose out of the same conduct. And also that substantially all of the witnesses would be identical for both counts. In the circumstances, the Court will grant the motion to consolidate with the understanding that as much as possible, it would be done to reduce the possibility of prejudice to the defendant by reason of her testifying or not testifying on one or the other count.

From this ruling, we find that the trial judge applied the applicable *Matias* standard in making his ruling. He weighed the competing factors and concluded that the prejudice to the appellant did not outweigh the need for judicial economy.

Decisions of trial courts involving Rule 14 motions "will not be reversed absent a clear showing of abuse of discretion." *State v. Matias, Id.* at 98, 550 P.2d at 902. Having found that the trial court utilized the proper test and weighed the pertinent factors, we hold that there has been no abuse of discretion in this case.

For all of the foregoing reasons, we affirm the convictions entered against the appellant.

*Francis T. O'Brien* on the briefs for appellant.

*Arthur E. Ross,* Deputy Prosecuting Attorney, on the brief for appellee.