STATE OF HAWAII, Plaintiff-Appellee, *v.* VERNON A. BLANDING, Defendant-Appellant

NO. 11796

(CR. NO. 85-1486)

MARCH 29, 1988

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY LUM, C.J.

. This appeal is from the conviction of Vernon A. Blanding for Murder (Hawaii Revised Statutes (HRS) § 707-701 (1985) ), Rape in the First Degree (HRS § 707-730(1)(a)(ii) (1985) ), Sodomy in the First Degree (HRS § 707-733(1)(a)(ii) (1985) ), and Kidnapping (HRS § 707-720(1)(d) (1985) ). The first issue on appeal is whether Defendant's statements were admissible at trial even though he was not informed of his *Miranda*[1] rights prior to the statements. The second issue is whether Defendant was prejudiced by comments by the trial judge during a bench conference which were overheard by some jurors. For the reasons set forth below, we affirm.

On November 17, 1985, Robert Crow returned home after 24-hour duty on the U.S.S. Reclaimer to find his wife raped, fatally stabbed, naked, her wrists tied to the bedposts of their bed, with a tee-shirt loosely tied around her neck. Crow gave the police a list of ten people who he recalled having been in his apartment prior to the murder. All of the ten were sailors on the U.S.S. Reclaimer and Defendant was one of the ten. The U.S.S. Reclaimer was leaving on a six month tour of duty on November 21, 1985. Thus, on November 20, 1985, the Honolulu Police Department got permission to interview the ten sailors. Orders were given to the sailors by a superior officer to cooperate and not to leave the ship until after the interviews. A small officer's quarters was used for the questioning. Prior to the ten minute interview, Defendant was not advised of his *Miranda* rights. The questioning was very general and involved name, age, length of Naval service, length of acquaintance with the Crows, period when last in the Crows' apartment, and whereabouts on the night of the murder. The same general line of questioning was given to each of the sailors. At the conclusion of the interview, Defendant voluntarily gave the police his finger-prints. Prior to leaving the ship, Defendant asked a police techni-

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

cian where in the Crows' apartment the fingerprints were found. This piqued the police officers' interest and they requested that Defendant's fingerprints be matched before the other nine.

Later that day, Defendant's latent finger and palm prints found in the Crows' apartment were matched with prints obtained from him during the on-board interrogation. The police returned to see Defendant that evening, and at that time, advised him of his *Miranda* rights.

During the trial, general instructions were given to the jury regarding their role as triers of fact, the presumption of innocence, and the burden of proof. The court further instructed the jury as follows:

Also from time to time, of course, we will have conferences at the bench. We call it a bench conference.

Quite clever, isn't it.

In any event, we will be whispering. We know we shouldn't whisper but it's a lot easier especially then where you don't have to file out of court every time. If the bench conference is for a long time up here, we will excuse you from the courtroom.

Again I ask you not to speculate on what we might be discussing.

And also with respect to objections and bench conferences to the extent that you are aware of how the Court has ruled on a particular matter.

Please do not infer from any ruling that I might make if I tend to favor or disfavor any of the positions of the parties. The rulings are not made with that in mind and we ask that you not speculate on what the Court may have in mind either.

At the conclusion of the State's case, Defendant's counsel moved for acquittal with respect to the rape and sodomy charges. During a bench conference with counsel on the motion, the judge noticed that several of the jurors were nodding their heads. The conference was stopped, and reconvened after the jury was dismissed for the day. The judge indicated to counsel that she was concerned that several of the jurors were listening in on the bench conference. During the final jury instruction, the court warned the jury as follows:

Statements or remarks made by counsel are not evidence. You should consider their arguments to you but you are not

bound by their recollections or interpretations of the evidence. You must also disregard any remark I may have made unless the remark was an instruction to you.

If I have said or done anything which has suggested to you that I am inclined to favor the claims or positions of any party, or if any expression or statement of mine has seemed to indicate an opinion relating to which witnesses are or are not worthy of belief or what facts are or are not established or what inferences should be drawn therefrom, I instruct you to disregard it.

## I.

Defendant argues that because he was not advised of his *Miranda* rights prior to the on-board police interrogation, any statements made must be suppressed pursuant to the exclusionary rule. *State v. Santiago,* 53 Haw. 254, 266, 492 P.2d 657, 664 (1971). Two criteria are required before *Miranda* rights must be given: (1) the defendant must be under interrogation; and (2) the defendant must be in custody. *State v. Russo,* 67 Haw. 126, 133-34, 681 P.2d 553, 560 (1984). The State does not contest the fact that Defendant was being interrogated.

The dispositive question is whether Defendant was in the custody of the police during the interrogation. A "totality of the circumstances" test is used to determine whether the questioning is custodial, using factors such as "time, place, and length of the interrogation, the nature of the questions asked, the conduct of the police at the time of the interrogation, and any other pertinent factors." *Russo,* 67 Haw. at 134, 681 P.2d at 560 (1984) (citations omitted). This court has stated that:

Among the relevant circumstances to be considered are whether the investigation has focused on the suspect and whether the police have probable cause to arrest him prior to questioning. While focus of the investigation upon the defendant, standing alone, will not trigger the application of the *Miranda* rule, it is an important factor in determining whether the defendant was subjected to custodial interrogation. (Citations omitted).

*State v. Melemai,* 64 Haw. 479, 481, 643 P.2d 541, 544 (1982).

Although the interrogation took place in a small room, and the sailors' superior officer had ordered them to cooperate, this alone did not create a custodial situation.

At the time of Defendant's on-board interrogation, the police knew only that Defendant's name had been given to them by Crow as someone who had frequented the Crows' apartment prior to the murder. This was also true of the nine other sailors. Until the police got Defendant's fingerprints and were able to match them with those at the murder scene, the police had not "focused" their investigation on Defendant. The interview was for a short period of time and the questioning was of a very general nature with each of the ten sailors being asked the same questions. Even though the police chose to match Defendant's fingerprints before the other nine sailors, at the time of the questioning, the overall investigation had not yet focused on Defendant.

Prior to the on-board interrogation, it cannot be said that Defendant was in custody and therefore, the police were not required to advise him of his *Miranda* rights at that time. The turning point of the investigation was the match of the fingerprints and the necessity of *Miranda* was triggered at that point. *Cf. Russo,* 67 Haw. 126, 681 P.2d 553 (1984) (statement regarding gun in trunk of automobile known to be involved in shooting initiated custody); *Melemai,* 64 Haw. 479, 643 P.2d 541 (1982) (admission of involvement in hit and run accident began accusatory custodial stage of investigation).

## II.

Defendant argues that the jurors who overheard the judge at the bench conference were improperly influenced by her remarks. This is not a case where unknown extra-judicial occurrences may have influenced a juror's impartiality. *Cf. State v. Keliiholokai,* 58 Haw. 356, 569 P.2d 891 (1977); *State v. Messamore,* 2 Haw. App. 643, 639 P.2d 413 (1982). It is unclear what statements were overheard. Defendant failed to move the court to *voir dire* the jury to determine what may have been overheard. Defendant has not shown that he was actually prejudiced by some members of the jury overhearing what transpired at the bench and prejudice will not be

presumed. *State v. Alfonso,* 65 Haw. 95, 98, 648 P.2d 696, 699 · (1982). Further, it is presumed that the jury will heed the court's cautionary instructions. *State v. Kahalewai,* 55 Haw. 127, 129, 516 P.2d 336, 338 (1973). The court cautioned the jury at the opening and closing of trial. Absent a showing of actual prejudice by Defendant, the error, if any, was harmless. *State v. Perez,* 64 Haw. 232, 234, 638 P.2d 335, 337 (1981).

### III.

Having found that statements made during the on-board interrogation were admissible at trial, and that Defendant failed to show he was prejudiced by the judge's remarks during a bench conference, we sustain Defendant's conviction.

*John Ashford.Thompson,* for defendant-appellant.

*Ellen Politano,* Deputy Prosecuting Attorney, for plaintiff-appellee.