**STATE OF HAWAII**, Plaintiff–Appellee, v. **STEVEN ROGER AUSTIN**, aka "**STEVE**," Defendant–Appellant

NO. 12644

(CR. NO. 87–154)

MARCH 1, 1989

LUM, C.J., NAKAMURA, PADGETT,
HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY HAYASHI, J.

Defendant–Appellant Steven Roger Austin (Austin) appeals his conviction for the first–degree promotion of the dangerous drug cocaine plus complicity pursuant to Hawaii Revised Statutes (HRS)

§§ 712–1241(1)(b)(ii)(B) (1985) and 702–222(1)(b) (1985).[1] At the jury trial over the defense objections, Plaintiff–Appellee State of Hawaii (State) had introduced evidence about the police drug sting "Operation Rabbit" to show the involvement with illegal substances of the prosecution witnesses who had testified about Austin's extensive drug trafficking. But Austin, who was not carrying drugs when arrested, had not been caught up in Operation Rabbit. Austin contends that the trial court abused its discretion by admitting the prejudicial, irrelevant evidence of his other crimes and of Operation Rabbit. We agree that the many references to Operation Rabbit constituted reversible error, therefore vacate the judgment of conviction, and remand the case for a new trial.

I.

**BACKGROUND FACTS**

The initial facts are not disputed. On April 1, 1987 at the Kailua–Kona airport after returning from San Francisco, Thomas Guzzetta (Guzzetta) was arrested, and the police discovered cocaine in a duffel bag. Guzzetta, though, asserted that Austin had obtained the cocaine in

---

[1] These statutes provide:

**§ 712–1241 Promoting a dangerous drug in the first degree.** (1) A person commits the offense of promoting a dangerous drug in the first degree if he knowingly:

. . . .

(b) Distributes:

. . . .

(ii)    One or more preparations, compounds, mixtures, or substances of an aggregate weight of:

. . . .

(B)    One–half ounce or more, containing any other dangerous drug . . . .

**§ 702–222 Liability for conduct of another; complicity.** A person is an accomplice of another person in the commission of an offense if:

(1)    With the intention of promoting or facilitating the commission of the offense, he:

. . . .

(b)    Aids or agrees or attempts to aid the other person in planning or committing it . . . .

California for distribution, so the police subsequently arrested Austin upon Austin's return to Hawaii on April 4, 1987. Austin, who was not transporting any cocaine, denied involvement in any illegal scheme but acknowledged traveling with friend Guzzetta in California. On April 10, 1987, Austin was charged with aiding or attempting to help Guzzetta distribute the dangerous drug cocaine on March 29, 1987.

On September 14, 1987, the defense moved *in limine* to exclude evidence of Austin's other crimes and his associates' drug dealings on the grounds that such evidence would 1) create undue prejudice, confuse the issues, mislead the jury, or waste time; and 2) influence the jury into convicting him based on uncharged offenses plus his associates' bad acts. State replied that the relevant evidence would prove Austin's 1) involvement in and familiarity with drug trafficking as part of his continuing scheme to import cocaine for sale in Hawaii; and 2) guilt although no cocaine was found when he was arrested. The parties repeated their arguments at the pretrial hearing on the motion, and the trial court took the matter under advisement.

At the jury trial, the deputy prosecutor gave her opening statement which asserted in pertinent part that:

> When Steven Austin stepped off the plane in Kona, he was immediately arrested by police officers of the Hawaii County Police Department and charged as an accomplice in a plan to distribute cocaine.
>
> Now, the question here is why? What had gone so wrong for Steven Austin? What had gone so wrong with the plan? What had gone wrong begins with the arrival of Thomas Guzzetta two days before. The police were waiting and perhaps the defendant expected this. *Operation Rabbit was drawing to a close and drug distributors all over the county were getting arrested.* How do we know that the defendant expected this? We know because he instructed Thomas Guzzetta to return with the cocaine first and then if everything was all right, to give him a call and then arrange for his passage home.
>
> . . . .
>
> *Then probably what the defendant least expected of all, we'll hear the testimony of Stephen Wasik, caught in Operation Rabbit for hashish.* Stephen Wasik [met] and was befriended by Steve Austin while they were jailed together at the

Hawaii Community Correctional Center in Hilo. Not knowing that Wasik had come to hate the drug lifestyle that had ruined his [Wasik's] own life, Steve Austin, in the pursuit of this new found friendship bragged about his cocaine operation—about his part in picking out the cocaine and giving it to Tom Guzzetta —about how he, Steve Austin, was arrested with nothing and so the State has no case. So arrogant and so confident is this defendant that as he sits in the jail awaiting trial, he's making— he's planning to continue his operation.

And how do we know that Steve Wasik is telling the truth? It's not only because he testifies at great risk to himself but because what he has to say could only have come from Steve Austin's mouth. Those little details that only the defendant would have known and only the defendant could have said is what we're going to hear from Steve Wasik.

Transcript of October 6, 1987 and October 7, 1987 at 23, 25–26 (emphasis added).

Later, Guzzetta plus Hermione Kalikolani Wingate (a mutual acquaintance of Guzzetta and Austin) testified about Austin's many drug sales (cocaine as well as marijuana) in Hawaii in recent years. Guzzetta also described the trip to California to obtain cocaine.

Subsequently over the defense objections, Hawaii County Police Sergeant Lionel Lincoln detailed Operation Rabbit, said that certain prosecution witnesses acquainted with Austin had been arrested for drug trafficking, but noted that Austin had neither been implicated nor caught in the police sting. The following exchange then occurred:

MR. GIANOTTI: Yes, Your Honor, at this time, we would move to strike the testimony of Sergeant Lincoln pertaining to Operation Rabbit, [prosecution witnesses] Tony Cerrone and Mr. Center on the grounds that *the testimony is totally irrelevant and has absolutely nothing to do with the case of which Mr. Austin is charged with.* And in addition, Your Honor,—well, we'll submit it on that.

THE COURT: Okay, thank you. Counsel?

MS. ROSS: Yes, Your Honor, I think that the evidence clearly shows that there is relevance to this evidence. Mr. Guzzetta testified that his instructions from the Defendant was to deliver part of the cocaine to Mr. Tony Cerrone; that there were

statements made by this Defendant while he was incarcerated regarding Tony Cerrone and regarding Bill Center. That was testified to by Mr. Wasik.

Mr. Wasik himself is a Defendant from Operation Rabbit and I believe that in order for the jury to make a fair determination of this case, they needed to hear what Operation Rabbit was about, so that they don't have any misperceptions based on anything that they might have heard through the media on what exactly this operation was about. And I think that the evidence clearly shows that this Defendant was not caught—and that in Operation Rabbit—and that Sergeant Lincoln testified to that fact.

. . . .

MR. GIANOTTI: I mean Judge, I think *it's guilt by association*, your bringing up the subjects which is totally void of this situation here. And the jury is hearing about a drug operation which my client has absolutely nothing to do with.

THE COURT: And I don't see any prejudice to your client.

MR. GIANOTTI: Well, if that jury hears about Operation Rabbit, as I previously informed the Court, it is a well known operation, there's been a number of people who pleaded guilty —the public and I'm sure everyone on that jury knows they associate my client with Operation Rabbit, it's going to give some prejudice in their mind, by gosh, *if he had any association with Operation Rabbit, he's guilty of this case.*

THE COURT: But there isn't a shred of evidence that he was, so therefore, I can't see how this could be prejudicial to your client at all.

MR. GIANOTTI: Well, without being argumentative, if there is no shred of evidence, then it's totally irrelevant to this case.

THE COURT: There are shreds of evidence connecting it to people in this case but certainly not your client, therefore under [Hawaii Rules of Evidence] Rule 403, balancing the prejudice against the relevance, I'm going to deny your motion.

Transcript of October 14, 1987 at 124–26 (emphasis added).

The defense thereafter sought to strike all the testimony about drugs other than the cocaine for which Austin had been arrested because of the prejudice and the confusion generated by the irrelevant evidence. State repeated its earlier position. Denying the motion to strike, the trial court held that "the evidence has disclosed that [Austin] was engaged in . . . distributing drugs and that he and Mr. Guzzetta were conspiring to achieve the criminal objective . . . the relevance [of the other illegal acts] outweighs any probable prejudice . . . ." Transcript of July 21, 1987, October 13, 1987, and October 15, 1987 at 180.

The jury afterwards found Austin guilty on October 16, 1987. After the entry of the judgment, Austin appealed.

## II.

## QUESTIONS PRESENTED[2]

We will answer the issues posed as follows:

I. Whether the trial court abused its discretion by admitting the evidence about Austin's other drug dealings? NO.

II. Whether the trial court abused its discretion by allowing the statements about Operation Rabbit? YES.

## III.

## AUSTIN'S PRIOR DRUG DEALINGS

Austin maintains that the testimony concerning his other bad acts amounted to prejudicial, irrelevant, and inadmissible character evidence.

---

[2] Although this court on July 20, 1988 struck the opening brief for Hawaii Rules of Appellate Procedure (HRAP) Rule 28(b)(4) noncompliance and ordered the filing of an amended opening brief, the amended opening brief is still deficient. The statement of the case section violates HRAP Rule 28(b)(3) by not listing what other crimes the prosecution witnesses had described, reciting what had happened at the trial, giving enough record citations, stating what objections were advanced below, nor explaining the *in limine* motion. *See* Amended Opening Brief at 1–2. The points of error section, moreover, ignores the HRAP Rule 28(b)(4) requirements to provide adequate citations, quote all the relevant motions plus rulings, declare why the trial court decided wrongly, and indicate what

State counters that the probative evidence of Austin's prior drug trafficking with Guzzetta demonstrated Austin's ongoing cocaine distribution plan and complicity with Guzzetta.

Although the trial court generally has the wide discretion to admit evidence, Hawaii Rules of Evidence (HRE) Rules 403 plus 404 specifically prohibit the introduction of prejudicial character evidence unless 1) an exception applies; and 2) there exists no other way to prove the accused's guilt. *See State v. Castro*, 69 Haw. ___, 756 P.2d 1033 (1988).[3]

---

matters are raised for the first time on appeal as plain error under Hawaii Rules of Penal Procedure (HRPP) Rule 52(b). *See* Amended Opening Brief at 2, 7, 15. These omissions are totally inexcusable (especially considering the striking of the original opening brief). *See State v. Hanawahine*, 69 Haw. ___, 755 P.2d 466 (1988).

[3]These rules state (emphasis added):

> **Rule 403 Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

> **Rule 404 Character evidence not admissible to prove conduct; exceptions; other crimes.** (a) Character evidence generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

> (1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;

> (2) Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

> (3) Character of witness. Evidence of the character of a witness, as provided in rules 607, 608, 609, and 609.1.

> (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. *It may, however, be admissible where such evidence is probative of any other fact that is of consequence*

Here, the identity of Guzzetta's drug supplier was in dispute, and Austin had denied any involvement in the cocaine trafficking at issue. Austin's past pattern of drug dealing with Guzzetta plus earlier trips to California to obtain cocaine is therefore probative of whether he had acted in complicity with Guzzetta in the instant action. *See State v. Prince*, 67 Haw. 231, 683 P.2d 1217 (1984). In short, State's evidence rebuts Austin's defense that he had not planned the crime where he had no cocaine when arrested. *See State v. Reyes*, 66 Haw. 613, 670 P.2d 1282 (1983) (per curiam).

Admittedly, the offenses in question might be improperly used to infer Austin's propensity to sell drugs. *See State v. Chong*, 3 Haw. App. 246, 648 P.2d 1112 (1982). But despite the potential prejudicial effect, the extreme similarity between Austin's pattern of earlier drug dealing plus importation from California and the current crime is extremely relevant to prove a common scheme. *See* HRE Rule 404(b).

Finally, the trial court instructed the jury that:

> The State has just offered evidence that the defendant at another time engaged in other crimes, wrongs or acts. That evidence was not admitted to prove the character of the defendant in order to show he acted in conformity therewith. The only purpose of admitting that evidence was to show proof of motive, opportunity, plan, knowledge, identity, absence of mistake [or] accident. *You may not use that evidence for any other purpose*. The defendant is not being tried for that other crime, wrong or act. *He may not be convicted for any other offense than that charged in this case*.

Transcript of October 16, 1987 at 25–26 (emphasis added).[4]

_____

> *to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident.*

The provisions are also codified in HRS ch. 626 (1985).

[4] This is the modified Defendant's Proposed Instruction 14, *given by agreement*. Transcript of October 16, 1987 at 12. Austin, however, urges that the trial court erred by so instructing the jury. Amended Opening Brief at 15. There was no objection raised at the trial as required by HRPP Rule 30(e) since the defense counsel consented to the modification.

Although there is no argument explaining the point (*see* note 2, *supra*), no HRPP Rule 52(b) plain error exists. *State v. Brezee*, 66 Haw. 162, 657 P.2d

A jury is presumed to follow a trial court's directive, so any prejudice was eliminated. *See State v. Blanding*, 69 Haw. ___, 752 P.2d 99 (1988). Accordingly, there was no reversible error. *See State v. Iaukea*, 56 Haw. 343, 537 P.2d 724 (1975).

## IV.

## OPERATION RABBIT EVIDENCE

Austin next advances that the information about Operation Rabbit, in which he was never caught or implicated, only served to prejudicially paint him as an associate of notorious drug dealers. State responds that the explanation about Operation Rabbit 1) was not detrimental to Austin since the pertinent testimony explicitly described his noninvolvement there; but 2) was necessary to connect some important prosecution witnesses with the drug dealing community and their knowledge about Austin's illegal activities.

Once more, this court must determine if the trial court abused its discretion in balancing the relevance of the controverted evidence against the adverse effect to Austin pursuant to HRE Rule 403. *State v. Morishige*, 65 Haw. 354, 652 P.2d 1119 (1982). HRE Rule 404 is not directly implicated, but Austin complains that the hinting at his involvement in Operation Rabbit through his associates (conceded drug dealers) unfairly indicates he is a drug dealer, too. *See State v. Medeiros*, 1 Haw. App. 536, 621 P.2d 986 (1981) (per curiam).

The testimony regarding Operation Rabbit was somewhat relevant to outline how the police received information about the incriminating statements of Austin. *See* HRE Rules 401 and 402.[5] But repeatedly em-

---

1044 (1983). We, moreover, condemn such an untimely assertion. *State v. Senteno*, 69 Haw. ___, 742 P.2d 369 (1987); *see* HRS § 641–16 (1985).

[5] The rules read:

**Rule 401 Definition of "relevant evidence".** "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

**Rule 402 Relevant evidence generally admissible; irrelevant evidence inadmissible.** All relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States and the State of

phasizing the Operation Rabbit link to the many important prosecution witnesses who knew Austin was far too extreme. *Cf. State v. Marsh*, 68 Haw. 659, 728 P.2d 1301 (1986).

Certainly, this evidence did not go towards proving Austin's identity as the drug supplier of Guzzetta. *See State v. Murphy*, 59 Haw. 1, 575 P.2d 448 (1978). For example, Austin's motive, opportunity, modus operandi, or state of mind are not shown (unlike the evidence of his prior bad acts). *See State v. Apao*, 59 Haw. 625, 586 P.2d 250 (1978), *subsequent resolution*, 66 Haw. 682, 693 P.2d 405 (1983) (per curiam). Furthermore, no jury instruction covered this specific problem. *Cf.* note 4, *supra*.

We cannot condone the unnecessary overkill on this point. Obviously, the guilt by association implication was too strong: since Austin was acquainted with so many disreputable characters, he must likewise be a bad person who was somehow connected with the illicit conduct of Operation Rabbit. *See State v. Estrada*, 69 Haw. ___, 738 P.2d 812 (1987). The jury could thus have easily been prejudiced by the continuous references to the police undercover activity. *See State v. Huihui*, 62 Haw. 142, 612 P.2d 115 (1980) (per curiam).

The prejudice generated by the frequent descriptions of Operation Rabbit more than substantially outweighed any relevance under HRE Rule 403. *See State v. Burkhart*, 5 Haw. App. 26, 675 P.2d 811 (1984). Hence, the inadmissible evidence violated Austin's fair trial rights. *See State v. Fox*, 70 Haw. ___, 760 P.2d 670 (1988).

## V.

## CONCLUSION

We therefore vacate the judgment of conviction and remand the case for a new trial because the error concerning Operation Rabbit was not harmless beyond a reasonable doubt. *State v. Wideman*, 69 Haw. ___,

---

Hawaii, by statute, by these rules, or by other rules adopted by the supreme court. Evidence which is not relevant is not admissible.

*See also* note 3, *supra*.

739 P.2d 931 (1987); *State v. Domingo*, 69 Haw. ___, 733 P.2d 690 (1987).

*E. F. Gianotti*, for Defendant–Appellant.

*Gilbert M. Halpern*, Deputy Prosecuting Attorney, for Plaintiff–Appellee.

### CONCURRING OPINION OF NAKAMURA, J.

I concur in the court's decision to set aside the judgment of conviction entered by the trial court. But I write separately to set forth my reservations on the discussion of the law governing the admission of testimony related to other crimes, wrongs, and acts committed by the defendant in complicity with Thomas Guzzetta and testimony related to "Operation Rabbit."

### I.

The cornerstone of the system of rational proof embodied in the Hawaii Rules of Evidence (Haw. R. Evid.), Hawaii Revised Statutes (HRS) § 626–1, is the concept of relevance. "Relevant evidence" is defined by Haw. R. Evid 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." By virtue of Haw. R. Evid. 402, "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States and the State of Hawaii, by statute, by [the Hawaii Rules of Evidence], or by other rules adopted by the supreme court." Irrelevant evidence, of course, "is not admissible." Haw. R. Evid. 402. Under the system of rational proof adopted by the legislature,

> [t]he determination of relevance is the process of determining whether the inference from [the proffered] facts to the material facts in the case is a permissible one. If so, the evidence comes in and the jury decides whether or not to draw the inference. If the court thinks the inference is improper, the evidence is excluded.

C. Wright & K. Graham, *Federal Practice and Procedure: Evidence* § 5162, at 17 (1978).

## II.

The testimony about the defendant's prior involvement in drug trafficking, I agree, was relevant and admissible. The court justifies its admission on these grounds:

> Here, the identity of Guzzetta's drug supplier was in dispute, and Austin had denied any involvement in the cocaine trafficking at issue. Austin's past pattern of drug dealing with Guzzetta plus earlier trips to California to obtain cocaine is therefore probative of whether he had acted in complicity with Guzzetta in the instant action. *See State v. Prince*, 67 Haw. 231, 683 P.2d 1217 (1984). In short, State's evidence rebuts Austin's defense that he had not planned the crime where he had no cocaine when arrested. *See State v. Reyes*, 66 Haw. 613, 670 P.2d 1282 (1983) (per curiam).

As the opinion states, the testimony undoubtedly tended to establish the identity of the defendant as the supplier of the seized drug as well as the scheme of the defendant and Guzzetta to promote its sale. Thus, the testimony was admissible under Haw. R. Evid 404(b) as evidence of other crimes, wrongs, or acts "probative of . . . plan, knowledge, [and] identity," not as an exception to the general rule of inadmissibility of character evidence under Haw. R. Evid. 404(a).

In discussing the law, however, the court appears to ascribe the admissibility of Guzzetta's testimony to Haw. R. Evid. 404(a) by stating:

> Although the trial court generally has the wide discretion to admit evidence, Hawaii Rules of Evidence (HRE) Rules 403 plus 404 specifically prohibit the introduction of prejudicial character evidence unless 1) an exception applies; and 2) there exists no other way to prove the accused's guilt. *See State v. Castro*, 69 Haw. ____, 756 P.2d 1033 (1988).

(Footnote omitted). It also appears to lay down a hard and fast rule of admissibility premised on the absence of other evidence to establish the defendant's guilt. I do not believe this aspect of the opinion accurately reflects the rule governing the admissibility of evidence of other crimes, wrongs, and acts.

"Haw. R. Evid. 404(b) . . . reiterates the common law rule 'that the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is introduced for some purpose other than to

suggest that because the defendant is a person of criminal character, it is more probable that he committed the crime for which he is on trial.'" *State v. Castro*, 69 Haw. at ____, 756 P.2d at 1041 (citations omitted).

But even when such evidence tends to establish a fact of conse-quence to the determination of the case, the trial court cannot admit the evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Haw. R. Evid. 403. In other words, the admissibil-ity of the evidence even after a demonstration of relevance is a matter of discretion. And,

> [i]n deciding whether the danger of unfair prejudice and the like substantially outweighs the incremental probative value, a vari-ety of matters must be considered, including the strength of the evidence as to the commission of the other crime, the similari-ties between the crimes, the interval of time that has elapsed be-tween the crimes, the need for the evidence, the efficacy of al-ternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility.

E.W. Cleary, *McCormick on Evidence* § 190, at 565 (3d ed. 1984) (foot-note omitted). The "need for the evidence" is but one of the factors a trial court must consider in weighing probative value against unfair prejudice pursuant to Haw. R. Evid. 403. The rule calling for a weighing of factors furnishes no basis for fashioning a subsidiary rule of admissibility based solely on the "need for the evidence."

### III.

In discussing the repeated references to "Operation Rabbit," the opinion states "this court must determine if the trial court abused its dis-cretion in balancing the relevance of the controverted evidence against the adverse effect to [the defendant] pursuant to HRE Rule 403." It goes on to say "[t]he testimony regarding Operation Rabbit was somewhat relevant to outline how the police received information about the incriminating statements of [the defendant]." The record, however, does not bear this out; it confirms instead that the proffered evidence was irrelevant.

In considering the defendant's motion to strike the testimony de-scribing the "sting" operation, the trial court observed there wasn't a

"shred of evidence" implicating the defendant therein. But the court nevertheless denied the motion, stating:

> There are shreds of evidence connecting it to people in this case but certainly not your client, therefore under [Hawaii Rules of Evidence] Rule 403, balancing the prejudice against the relevance, I'm going to deny your motion.

If, as the trial judge found, there was no shred of evidence connecting the defendant and Operation Rabbit, testimony about it was irrelevant; "there [was] no room for ad hoc balancing. The evidence [was] then unequivocally inadmissible[.]" E.W. Cleary, *supra*, at 565. For it had no rational "tendency to make the existence of any fact that [was] of consequence to the determination of the action more probable or less probable than it would [have been] without the evidence." Haw. R. Evid. 401. Of course, it could have had an irrational and improper tendency to do so, as the opinion implies; but it is a system of rational proof we are expounding.