STATE OF HAWAII, Plaintiff-Appellee, *v.* SEAN KAEHUOKALANI PULAWA, Defendant-Appellant

NO. 6493

JULY 7, 1980

RICHARDSON, C.J., OGATA, MENOR, JJ., RETIRED JUSTICE KOBAYASHI AND CIRCUIT JUDGE LUM ASSIGNED BY REASON OF VACANCY

210

OPINION OF THE COURT BY OGATA, J.

Defendant-appellant Sean Kaehuokalani Pulawa, here-inafter appellant, was convicted after a jury trial of two counts of robbery in the second degree in violation of Section 841(1)(a) of the Hawaii Penal Code, Act 9, Session Laws of Hawaii, 1972,[1] and one count of kidnapping in violation of Section 720(1)(e) of the Hawaii Penal Code, Act 9, Session Laws of Hawaii, 1972.[2] Thereafter, he was sentenced to serve a prison term of four years[3] as a youthful offender. He has appealed from this judgment and sentence. We affirm.

---

[1] This statute is now designated as HRS § 708-841(1)(a) [1976 replacement].

[2] This statute is now designated as HRS § 707-720(1)(e) [1976 replacement].

[3] The original judgment and sentence was filed on February 17, 1977. An amended judgment and sentence was filed on February 23, 1977, but dated February 17, 1977, to indicate therein the original place of confinement shall be at Halawa Correctional Facility.

## I.

Appellant contends that the trial court erred when it denied his motion which was filed just before the commencement of trial in which he sought to quash and dismiss the indictment. In this motion appellant alleged that substantial improprieties had occurred before the grand jury based upon the conduct of the deputy prosecuting attorney, and because of such alleged prejudicial misconduct appellant was denied his constitutional right to a fair and impartial grand jury proceeding and due process of law as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 4[4] and 8[5] to the Hawaii Constitution. A copy of the transcript of the proceedings before the grand jury was attached to the motion.

The alleged misconduct by the deputy prosecuting attorney related to the examination of Xavier Adriano, who appeared as a witness before the grand jury. On March 13, 1976, both appellant and co-defendant, Edward Kumukau, were known to this witness. Xavier Adriano had been interrogated by Detective Pocock of the Honolulu Police Department several hours after these alleged offenses had been committed by appellant and his co-defendant, and at that time Pocock had been told by Xavier that he had seen Edward Kumukau, Sean Pulawa and another male, Edward Kekoa near the vicinity of Petrie Park. However, during and at the grand jury hearing held on March 17, 1976 when the deputy prosecutor questioned Xavier, he denied ever seeing during that night Pulawa, Kumukau and Edward Kekoa. Thus the following colloquy ensured:

Q. Petrie Park, okay. Did you see Sean Pulawa and Edward Kumukau near Petrie Park there?
A. No.

---

[4] This section is now identified in the amended Hawaii Constitution as Article I, Section 5, Due Process and Equal Protection.

[5] This section is now identified in the amended Hawaii Constitution as Article I, Section 10, Indictment, Double Jeopardy, Self-incrimination.

Q. Okay. Are you acquainted with Miles Muranaka and Steve Takushi?

A. I know Miles from before.

Q. During the course of the evening, did you see Sean Pulawa with Miles Muranaka at any time?

A. No.

Q. Okay. Xavier, do you understand that you are under oath?

A. Yep.

Q. And if you state anything to the Grand Jury that is not true, you are subject to being prosecuted for perjury?

A. Yep.

Q. Do you recall giving a statement to Detective Pocock?

A. I was talking to him but, yeah, in the morning.

Q. Okay. Do you recall telling him that you saw Sean Pulawa and Edward Kumukau?

A. No, I don't remember.

Q. Do you recall telling him that you saw Sean Pulawa and Edward Kumukau across the street with Miles Muranaka and another individual.

A. I never tell him that, no.

Q. Is it your statement then to the Grand Jury that you did not tell him this?

A. I don't know what I told him.

At a later occasion during the same grand jury session involving the same witness, the deputy prosecutor further cautioned this witness about falsifying testimony before the grand jury in the following manner:

Q. All right. I have already advised that you are under oath and subject to penalty of perjury if you falsify any statement, any material statement to the Grand Jury.

A. Yeah.

Q. Specifically, didn't you tell Detective Pocock that you saw Sean Pulawa, Edward Kumukau, and Edward Kekoa standing outside these three cars?

A. (nods head no.) [Sic.]

Just close to the conclusion of the examination of Detective Pocock before the grand jury by its foreman, the deputy

prosecutor voluntarily interjected the following:

> [Deputy Prosecutor]: As far as any possible perjury charges against Xavier and any line, we'll bring that up in a further hearing if we feel we've got sufficient evidence.

In our affirmance of *State v. Joao*, 53 Haw. 226, 491 P.2d 1089 (1971), we held that the conduct by the deputy prosecutor by a comment made by him that a witness "has decided to make a clean breast" to the grand jury had resulted in a tendency to prejudice which may be presumed because the trial court had found that the 'grand jury "might not have returned an indictment" if the prosecution had not so informed the grand jury. We therefore held "that the conduct of the prosecutors was contrary to those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions." *Id.* at 230, 491 P.2d at 1091. In that case appellees Joao and Dawson were charged in an indictment with first degree murder. The prosecution's sole witness before the grand jury was Cole U. Kekahuna, who had been first charged with this offense. The grand jury transcript revealed that the deputy prosecutor began as follows:

> As Mr. Chung [Prosecuting Attorney for the City and County of Honolulu] has said, the witness that we will present to you this afternoon is Cole U. Kekahuna. Very briefly, Cole Kekahuna was the original defendant charged with the murder. . . . Cole Kekahuna has been in jail for 3½ months, and as Mr. Chung says, he has decided to make a clean breast. On his testimony, we seek an indictment. . . . *Id.* at 227, 491 P.2d at 1090.

Upon the conclusion of a hearing to quash and dismiss the indictment, the trial judge in this case had found that the Grand Jury might not have returned an indictment if these statements backing Kekahuna [had] not been made. . . . [So] the Court [finds] that the defendants were prejudiced in their constitutional rights to a fair and impartial hearing. . . ." *Id.* at 227-228, 491 P.2d at 1090.

Subsequently, we were confronted by another grand jury case involving a response from a witness to the grand jury which was alleged to have a tendency to prejudice the appellee before the grand jury. *State v. Scotland*, 58 Haw. 474, 572

P.2d 497 (1977). In that case defendant was charged in the indictment with promoting a harmful drug in the first degree. We also reviewed the transcript before the grand jury and found that the problem there related to one of the answers given by a witness who stated: "Earlier we had decided to work on a case against this Scotland. We knew he had been pushing drugs." Although the trial judge had found the last sentence had a tendency to prejudice, we found otherwise. In reversing the dismissal of the indictment by the trial court, we held in *Scotland, supra* at 476-77, 572 P.2d at 499:

> We hold that in proceedings determining the validity of an indictment, the state does not have the burden of proving that the alleged illegal or improper testimony is not prejudicial; it is the duty of the defendant to come forward and present a case proving prejudice. "[I]n the absence of proof, the court will not assume or conjecture, as a matter of fact, that the grand jury deliberations were so infected as to invalidate the indictment." *United States v. Hoffa*, 205 F.Supp. 710 (S.D.Fl. 1962), *cert. denied sub nom. Hoffa v. Lieb*, 371 U.S. 892 (1962). "We rule that a specific showing of prejudice is necessary to make erroneous the action of the trial judge in refusing to dismiss the indictment." *Beck v. United States*, 298 F.2d 622, 627 (2d Cir. 1962), *cert. denied* 370 U.S. 919 (1962); *United States v. Hoffa, supra.*

We had previously held in *State v. Layton*, 53 Haw. 513, 516, 497 P.2d 559, 561 (1972), that "[t]here is a presumption that an indictment has been found by a grand jury upon sufficient evidence. . . . The presumption, until the contrary appears, is that a grand jury acted upon legal evidence, and the burden rests on him who asserts that it did not to prove it."

In *Costello v. United States*, 350 U.S. 359, 363 (1956), the Supreme Court there stated: "An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on its merits. The Fifth Amendment requires nothing more."

The petitioner in *Costello* had urged that the Court should exercise its power to supervise the administration of justice in federal courts and establish a rule permitting defendants to challenge indictments on the ground that they are not supported by adequate or competent evidence. The Court responded to this contention that "[n]o persuasive reasons are advanced for establishing such a rule. It would run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules. Neither justice nor the concept of a fair trial requires such a change. In a trial on the merits, defendants are entitled to a strict observance of all the rules designed to bring about a fair verdict. Defendants are not entitled, however, to a rule which would result in interminable delay but add nothing to the assurance of a fair trial." *Id.* at 364.

The Ninth Circuit Court of Appeals established the rule that only in a flagrant case and perhaps only where knowing perjury, relating to a material matter had been presented to a grand jury should the trial judge dismiss an otherwise valid indictment returned by an apparently unbiased grand jury. *United States v. Kennedy*, 564 F.2d 1329 (9th Cir. 1977).

This same court on a subsequent occasion considered and elaborated on a similar principle. In *United States v. Samango*, 607 F.2d 877, 882 (9th Cir. 1979), it held:

> We acknowledge that the grand jury need not be advised of all matters bearing upon the credibility of potential witnesses. Dismissal of an indictment is required only if flagrant cases in which the grand jury has been overreached or deceived in some significant way, as where perjured testimony has knowingly been presented [footnote and citation of cases omitted]. We believe however, that the grand jury in this instance was overreached and that a line must be drawn beyond which a prosecutor's control over a cooperative grand jury may not extend. Although deliberate introduction of perjured testimony is perhaps the most flagrant example of misconduct, other prosecutorial behavior, even if unintentional, can also cause improper influence and usurpation of the grand jury's role. [Footnote omitted.]

It was further held in this case that, "The cumulative effect of the above errors and indiscretions,[6] none of which alone might have been enough to tip the scales, operated to the defendant's prejudice by producing a biased grand jury" *id.* at 884; and, hence, the court stated "we conclude and hold that the manner in which the prosecution obtained the indictment represented a serious threat to the integrity of the judicial process. The District Court's dismissal, therefore, was a proper exercise of its supervisory power." *Id.* at 885.

We would consider *Samango* to be on the extreme side like our case in *Joao.* In *United States v. Chanen,* 549 F.2d 1306 (9th Cir. 1977), the court made the observation at page 1310 that:

Despite the holdings of these cases, it is clear that·the courts have been reluctant to dismiss indictments because of prosecutorial misconduct. *Beatrice Foods Co., v. United States,* 312 F.2d 29, 39 (8th Cir.) *cert. denied,* 373 U.S. 904, 83 S.Ct. 1289, 10 L.Ed.2d 199 (1963). This reluctance is demonstrated by a review of several of the many cases where motions to dismiss were denied. For example, in *United States v. Bruzgo,* 373 F.2d 383 (3d Cir. 1967), the defendant alleged that the prosecutor had threatened a grand jury witness, a business associate of defendant, with imprisonment, a fine and loss of citizenship. The prosecutor also allegedly called the witness a "thief" and a "racketeer". For purposes of its decision, the court took these allegations as true. The court first noted that the prosecutor's comments "exceeded the bounds of proper conduct by prosecutors and . . . their use is to be condemned." . . . . Nevertheless, the court concluded "that the conduct of the prosecutors before the grand jury did not under the present facts create a defect of constitutional or legal proportions. It follows that the

---

[6] Apparently, the court was referring to the submission to the grand jury of prior prejudicial grand jury transcripts; the prosecutor's prior knowledge of Granat's doubtful credibility and his failure to warn the grand jury of such credibility, or to apprise them that they could subpoena his live testimony; and the conclusionary testimony by witness Wong.

grand jury proceedings were valid and that there was no error in denying defendant's motion to dismiss the indictment." . . . .

After a review of these previous cases, the court then reversed the dismissal of the indictment against defendants which was returned by a third and separate grand jury hearing the testimony given to the first grand jury. It stated that "Reading transcripts of sworn testimony, rather than presenting live witnesses, simply does not constitute, on the facts of this case, 'fundamental unfairness' or a threat to 'the integrity of the judicial process.' " *Id.* at 1311; *see United States v. Riccobene,* 451 F.2d 586 (3rd Cir. 1971).

It is not asserted here by appellant that the indictment is defective on its face or that it was not returned by a legally constituted and unbiased grand jury other than for the alleged misconduct by the deputy prosecuting attorney. It is asserted by appellant that the alleged improper statements and inferences therefrom made by the prosecutor constituted prejudicial misconduct and tended to influence the grand jury's interpretation of the evidence; that the alleged prejudicial exhortations by the prosecutor discredited Adriano and caused the grand jury to look more favorably upon Detective Pocock's testimony that the witness had previously told him that he saw appellant at the scene of the alleged offenses. Detective Pocock's testimony and Adriano's testimony were both before the grand jury for evaluation. We need not add our version as to the effect of these comments by the prosecutor. As a matter of fact the trial court made no findings of any misconduct before the grand jury by the deputy prosecuting attorney. The trial court at the conclusion of the motion to dismiss simply stated "I don't think he influenced the Grand Jury at all." We hold that such a finding is consonant with the provisions of subparagraph (b) of § 3.5 of the Approved Draft of the American Bar Association Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function.[7]

---

[7] Subparagraph (b) of § 3.5 of the Approved Draft of the American Bar Association Project on Standards for Criminal Justice, Standards Relating to the Prosecution

Under the facts of this case, we adopt the rule stated by the above federal cases and in *State v. Schamberg*, 146 N.J. Super. 559, 564, 370 A.2d 482, 485 (1976) that:

Unless the prosecutor's misconduct before a grand jury is extreme and clearly infringes upon the jury's decision-making function it should not be utilized as a stepping stone to dismissal of an indictment. As has often been observed, an indictment should only be quashed on the clearest and plainest grounds. [Citation of cases omitted.]

There was no error committed by the trial court in the exercise of its discretion in not finding that the prosecutor's conduct before the grand jury unduly influenced it. The motion to dismiss the indictment was properly denied.

## II.

The next error alleged by appellant is one which relates to the admissibility of testimony of the victim as to what he said to the co-defendant Kumukua when he was in his car before he escaped by jumping from such moving vehicle. As Mr. Muranaka, a prosecution witness and one of the victims of the robberies and kidnapping was on the witness stand and had responded: "Yeah, he was going to take us someplace where his friend was waiting," there was an objection and a request to approach the bench by the defense. The trial court believed at first that a bench conference was unnecessary but reconsidered that ruling when defense counsel stated to the court that the objection was made for the reason stated before, referring to an earlier bench conference that had occurred during the State's presentation of the opening statement.[8]

---

Function and the Defense Function states: "The prosecutor should not make statements or arguments in an effort to influence grand jury action in a manner which would be impermissible at trial before a petit jury."

[8] During this bench conference defense counsel stated: "I'd like to file a Motion in Limine at this point to keep the prosecution from bringing into evidence or stating in his opening statement any reference to what happened in the car between Mr. Muranaka and [co-defendant] Kumukau. It's not properly before the jury. . . ." The trial court overruled the request by appellant to file a Motion in Limine.

The court then allowed both counsel to approach the bench. The court finally disposed of this evidentiary problem by its ruling: "Well, you can ask him based upon what he said, in the car — what did he do, but don't go specifically to what he said."

We stated in *State v. Iaukea,* 56 Haw. 343, 349, 537 P.2d 724, 729 (1975), that "[t]he responsibility for maintaining the delicate balance between probative value and prejudicial effect lies largely within the discretion of the trial court." Under the circumstances, we do not consider that the trial court committed reversible error by the denial of appellant's Motion in Limine, or in the admission of such testimony in accordance with this ruling, Further, we are unable to conceptualize what prejudice the appellant could have sustained by these rulings. HRS § 641-16 [Supp. 1979].[9] Certainly the "determination of relevancy resting in the discretion of the trial judge, we find no abuse of that discretion." *Territory v. Henry,* 39 Haw. 296, 299 (1952).

### III.

During the further cross-examination of the victim Muranaka, the appellant moved the trial court for a mistrial on the grounds that the prosecutor had mentioned in the presence of the jury the phrase "mug photograph" in referring to the photograph of the appellant which had been used during his pre-trial identification. The trial court *sua sponte* immediately upon hearing the objectionable words sustained an objection to the statement made by the prosecutor, albeit no specific objection was stated by appellant. Appellant then moved for a mistrial on the grounds that the prosecutor had stated to the jury the words "mug photograph" which undoubtedly suggested that the police department has photographs of the appellant, causing the jurors to believe that he

---

[9] This section provides in pertinent part: "No order, judgment, or sentence shall be reversed or modified unless the court is of the opinion that error was committed which injuriously affected the substantial rights of the appellant."

had been arrested or convicted for a prior criminal act. Appellant's motion for mistrial was denied. This is alleged by appellant as his third point of error.

In *State v. Huihui*, 62 Haw. 142, 612 P.2d 115 (1980), which was just decided, we held it is erroneous for a trial judge to overrule an objection by the defense to a question asked by a prosecutor to a witness before a jury employing the phrase "police mug photographs" because such a phrase would have reference to defendant's identity that he had been previously routed through the arrest process and suggests to the jury that he has a prior criminal record.

Of course such a holding is in accord with our holding in *State v. Kahinu*, 53 Haw. 536, 498 P.2d 635 (1972), *cert. denied*, 408 U.S. 1126 (1973). In both of these cases we considered whether or not the reception of such evidence had any effect on the verdict. While in *Kahinu* we held "that the error 'did not contribute to the verdict obtained' ", *id.* at 550, 498 P.2d at 644, we held in *Huihui* "we find that the error raised a reasonable possibility of having contributed to the conviction; we cannot say that it was harmless beyond a reasonable doubt." *State v. Huihui, supra* at 146, 612 P.2d at 117.[10]

Thus we stated in *Huihui:*

As the reviewing court, can we conclude, from the record as a whole, that the error was harmless beyond a reasonable doubt? *State v. Pokini*, 57 Haw. 26, 548 P.2d 1402 (1976), *cert. denied*, 429 U.S. 963 (1976). Error is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record

---

[10] In *State v. Huihui, supra*, defendant's objection to the question containing the words "police mug photographs" was overruled and the evidence was received. In the instant case the trial court had sustained the objection to the objectionable words so that it may be argued that the evidence was not received. No other cautionary instructions that the jury shall disregard the statement or other objectionable remarks and that such statement or remarks are to be stricken were given because they were not requested by defense counsel.

shows it to be entitled. In that context, the real question becomes, whether there is a reasonable possibility that the error might have contributed to the conviction.''
*Id.* at 145, 612 P.2d at 117.

We have carefully examined the record in this case. The State's evidence is the only evidence in this case. There was no problem concerning identification of appellant as the guilty party[11] as in *Huihui*, and guilt was clearly established by ample evidence beyond a reasonable doubt. The jury was able to reach a verdict in less than two hours. Using the language of *Tucker v. United States*, 431 F.2d 1292, 1293 (9th Cir. 1970): "This leads us to conclude that the prosecution firmly proved that the evidence of prior convictions did not contribute to the verdict of guilty, the error was therefore harmless beyond a reasonable doubt.'' In our opinion, we conclude that the prosecutor's inadvertent reference to "mug photographs'' did not contribute to the verdict, the error was therefore harmless beyond a reasonable doubt.

### IV.

Finally the appellant alleges that the trial court committed reversible error when it denied appellant's motion for judgment of acquittal as to the kidnapping charge. We have carefully examined the error alleged and find it to be without merit.

Judgment is affirmed.

*Marie N. Milks*, Deputy Public Defender, on the briefs, for defendant-appellant.

*Lee T. Nakamura*, Deputy Prosecuting Attorney, on the brief, for plaintiff-appellee.

---

[11] Appellant states at page 7 of his reply brief: "Here, the identity of the Appellant was never really an issue at trial and in fact, proof of identity was not the purpose for which this testimony was introduced.''