120 P.3d 1136

**STATE of Hawai'i, Plaintiff–Appellant,**

v.

**Derek VAN ALDERWERELT,**
**Defendant–Appellee.**

**No. 26161.**

Intermediate Court of Appeals of Hawai'i.

Aug. 11, 2005.

Reconsideration Denied Aug. 29, 2005.

Certiorari Dismissed Oct. 13, 2005.

Arleen Y. Watanabe, Deputy Prosecuting Attorney, County of Maui, on the briefs, for Plaintiff–Appellant.

Joel Edelman, on the briefs, for Defendant–Appellee.

BURNS, C.J., WATANABE and NAKAMURA, JJ.

Opinion of the Court by BURNS, C.J.

Plaintiff–Appellant State of Hawai'i (the State) appeals from the "Amended Order of Dismissal on Defendant's Motion to Dismiss, Filed July 30, 2003," filed in the Family Court of the Second Circuit[1] on October 15, 2003, dismissing the State's March 27, 2003 Complaint charging Defendant–Appellee Derek Van Alderwerelt (Derek) with Abuse of Family and Household Member, Hawaii Revised Statutes (HRS) § 709–906 (Supp. 2004). The complaint identified Sabina Laschinski (Sabina) as the abused family or household member. We reverse and remand for further proceedings.

## BACKGROUND

On May 6, 2003, Joel Edelman (Edelman) was appointed as counsel for Derek. Prior to May 16, 2003, Edelman caused subpoenas duces tecum to be served on the custodians of the records of the following health care facilities utilized by Sabina: Hina Mauka, Kaiser Permanente, Maui Memorial Medical Center, and Aloha House.

On July 30, 2003, Edelman filed a motion to dismiss the complaint "based on Hawaii Rules of Penal Procedure, Rule 12[.]"[2] In

the supporting memorandum, Edelman stated, in relevant part, as follows:

The following facts are undisputed:

[Derek], and the complaining witness, [Sabina] are the parents of [a male child], d.o.b. January 30, 2003.

Derek and [Sabina] had been living with each other prior to [the male child's] birth and continued to live with each other up to the time of the incident in question.

Sabina, who is a registered nurse, has a history of drug abuse/addiction and a history of emotional instability. . . .

. . . .

Beginning shortly after Joel Edelman became Derek's attorney, Derek sought Sabina's permission to be interviewed. In late May 2003, such an interview finally took place. It was attended by Derek, Sabina, Sabina's attorney (for the DHS [Department of Human Services, State of Hawai'i] case), Renata Foster Au and Joel Edelman. Although Sabina responded to many questions, she refused to answer many sensitive questions concerning the details of the incident in question and she refused to answer any questions about her drug use and her current or past treatment. Sabina indicated that she was exercising her right to refuse to answer many questions based on her Fifth Amendment rights against self-incrimination.

. . . .

*Grounds for Dismissal*

1. Derek has sought documents concerning Sabina's current and past drug addictions, her current and past emotional/psychological state and her current and past treatment. Sabina has refused to allow access to such information that is vital and relevant to Derek's defense against the criminal charge. Sabina's psychological/emotional "stability" is a key issue concerning her actions and words to Derek on the day of the incident. Her stability also affects the credibility of the reports she made to the police (and to the Family Court).

---

1. Judge Reinette W. Cooper presided.

2. The title of Hawai'i Rules of Penal Procedure Rule 12 (2005) is "Pleadings and motions before trial; defenses and objections."

Given that Derek has been prevented from having access to this relevant information, Derek cannot have a fair trial.

2. Given that during Sabina's pre-trial interview with Derek's attorney, she chose to exercise her Fifth Amendment privilege against self-incrimination as to critical aspects of the case, [Sabina] has prevented Derek from adequately preparing for trial. Even if Sabina would not exercise her Fifth Amendment rights at trial, Derek will have been prevented from preparing for trial. If Sabina does exercise said rights at trial, the case should also be dismissed. Either way, it should be dismissed.

3. During her interview in late May, Sabina has indicated that she had lied and/or greatly exaggerated her statements to the police and the Family Court concerning Derek's conduct. She recanted most of her allegations.

4. Much of the motivation and energy that caused Sabina to make her allegations had to do with her belief on the day in question that Derek's acts were life-threatening to the infant. Her belief was unwarranted. Even Sabina admits that there was no factual basis for her exercising her infant-protection instincts.

5. Taking this case to trial is a waste of precious judicial and prosecutorial resources.

6. The more compelling State interest in this entire unfortunate situation is the short-term and long-term physical and emotional health of the infant. Other branches of the State government (specifically, DHS and the Family Court) are doing their best to treat Sabina and to reunify the family. The prosecution appears to be working directly against that worthy goal.

7. Compelling Sabina and Derek to go through this criminal trial has a reasonably high probability of:

(a) Again bringing up painful issues that will impede [Sabina's] recovery from drug addiction and from her other diagnosed emotional/psychological conditions.

(b) Putting a tremendous and unnecessary strain on [Sabina] and Derek at the same time that everyone (except the prosecution) has been working very hard to build a positive and sustainable relationship between the relevant parties.

(c) Based on the State [sic] of the evidence, it is unlikely that Derek will be convicted. Good prosecutorial practice, as set forth in national standards, is to not go forward with a criminal trial unless there is a high likelihood of conviction. Under the circumstances of this case, it cannot be stated that there is such a likelihood.

(d) There does not appear to be any remaining prosecutorial, societal or other public interest in further pursuing this criminal matter. Whatever could be accomplished as a result of the charges being filed, has already been accomplished. Just because Sabina, the police and, later, the prosecutor saw fit to move this case forward immediately following the incident, are no longer good reasons to keep moving forward on a matter that has "run out of steam."

There are no longer any healthy or independently, justifiable reasons to go forward with this prosecution.

(e) This case stretches "prosecutorial discretion" beyond its intended limits. It appears that the Prosecutors office seems attached to Sabina's now discredited statements. Furthermore, the Prosecution is basing its case on assumptions and beliefs that existed at the time that this matter was filed.

*Conclusion*

For all of the above stated facts and reasons, this case should be dismissed in the interest of justice.

A hearing was held on July 31, 2003. On August 11, 2003, the State filed its memorandum in opposition stating, in relevant part, as follows:

The seven grounds for dismissal raised within [Derek's] motion have no legal basis and serve no purpose other than to bring to light outside information that may otherwise be inadmissible during this criminal trial.

At the appropriate time during trial, the defense will have ample opportunity to impeach the victim in this case. Furthermore, [Derek] has provided no legal authority to support his motion to dismiss, and instead relies solely upon conjecture that has no support in the record. [Derek] argues that he is being denied access to relevant information pertaining to [Sabina's] treatment or substance abuse assessment. However, the federal [Health Insurance Portability and Accountability Act of 1996 (HIPAA]) statutes and regulations prohibit the release of the information sought without the victim's consent.

On August 14, 2003, a hearing on the motion to dismiss was held and the court orally stated its decision, in relevant part, as follows:

THE COURT: [Derek] has a right to prepare his defense and his defense strategy and he's being precluded already when he can not [sic] even get a statement without her pleading the fifth, and get medical records that are relevant to his defense. . . .

So, notwithstanding the State's concern and arguments, I am going to dismiss this matter. . . .

. . . .

THE COURT: . . . If [Sabina] wants to allow release of her medical records that are relevant to the claim of abuse, and, you know, commit to you folks she won't take the fifth when she's on the stand, you have the right to refile within 90 days.

. . . .

THE COURT: Here's all I'm saying. . . . It can be refiled. But she can not [sic] hide behind HIPA [sic] and not allow confrontation of the witness. He has a right to confrontation of his accuser. She can not [sic] hide behind [the] fifth.

If she's going to make a complaint, come forward, let it all, [sic] and then I'll decide who's more believeable. But I don't want to be in a position of deciding credibility in a vacuum.

On August 28, 2003, the State filed a motion for reconsideration in which it noted, in relevant part, as follows:

Under the Health Insurance Portability and Accountability Act of 1996 (hereinafter "HIPAA"), a covered entity, in this case, Aloha House, Hina Mauka, and the hospital, may disclose protected health information without the written authorization of the individual in a judicial proceeding such as this one in response to an order of a court.

45 CFR § 164.512 of the Code of Federal Regulations, part 164 Security and Privacy, subpart E . . . .

Defense counsel should have pursued a court order as a possible remedy after he encountered restrictions because of HIPAA. Instead, defense counsel never followed through in court with the subpoenas duces tecum he served on Aloha House, Hina Mauka, Kaiser and the hospital. There were intermediate steps to explore before his request for the extraordinary remedy of dismissal of this charge.

. . . .

. . . The information sought by [Derek] in this case was neither within the prosecution's control, nor even known to the State. The State's decision to continue in the prosecution of the Abuse of a Family or Household Member charge in this case was not merely the result of a so-called "no bounce" policy as the Court stated. The State believes that domestic violence is a serious matter, and understands that the dynamics of domestic abuse are such that not all victims will necessarily be cooperative in the prosecution of these cases. Nevertheless, there is a recognized need to advocate for victims of domestic violence, and that includes the prosecution of Abuse cases such as the one in the instant case.

On September 12, 2003, Edelman filed a memorandum in opposition to the State's motion for reconsideration and stated therein, in relevant part, as follows:

As more fully set forth in the attached declaration of Joel Edelman, on June 5, 2003, the attorneys and the Court had a lengthy in-chambers conference concerning all of the numerous separate reasons why [Derek] believed that the Complaint should be dismissed, including the issue of [Derek] not receiving the subpoenaed medical,

psychological and drug treatment records. [Sabina] had refused to give her authorization to release said records.

In chambers, the Court made it clear that *if* [Derek] sought an order to compel the subpoenaed documents to be released to [Derek], this Court would not order that said documents be produced.

Yes, [Derek] could have filed such a motion with the Court "for the record," but such a filing would not have resulted in the documents being produced. In other words, [Derek] would have to file a *separate* action in *Federal Court* (on Oahu) under [HIPAA] if [Derek] wanted a Court order.

Such an action in Federal Court would not necessarily have resulted in the records being produced on this misdemeanor. In terms of the time and expense involved, [Derek] believed that it would be unreasonably costly and time consuming to bring such an action in Federal Court.

(Emphases in original.)

On September 16, 2003, the court entered an "Order of Dismissal on Defendant's Motion to Dismiss, Filed July 30, 2003" (September 16, 2003 order of dismissal). This order stated, in relevant part, as follows:

1. The Court finds that:

(a) The complaining witness, Sabina Lachinski, has refused to allow [Derek] to have access to her medical, psychological and drug treatment records-all of which are relevant to this case. Said refusals were based on the Federal [HIPAA] statute and regulations.

(b) [Sabina] has refused to answer relevant questions posed to her by [Derek's] counsel. Said refusals were based on [Sabina's] assertions of [her] Fifth Amendment right against self incrimination.

2. The Court finds that, individually and in combination, these refusals have prevented [Derek] from being able to adequately prepare for trial.

3. The Court finds that, based on the above, the Prosecutor's Office should be dismissing this case. However, because of the "no bounce" policy of the Prosecutor's Office in abuse of family and household members cases, the Prosecutor's Office will not dismiss this case.

4. This case should be dismissed because the Court does not believe [Derek] can receive a fair trial under these circumstances.

5. Based on the above stated findings, the Court orders that this case be dismissed.

6. This dismissal is without prejudice, for a period of ninety (90) days.

7. If, within said ninety (90) days, [Sabina] allows the release of her medical, psychological and drug treatment records to [Derek] and if she answers all questions put to her by [Derek's] counsel, the Prosecution may re-file it's [sic] complaint.

8. If [Sabina] fails to do all of the acts set forth in paragraph 7 within said ninety (90) days, this case will be automatically dismissed with prejudice.

At a hearing on September 18, 2003, the court orally decided to strike paragraph no. 8 of the September 16, 2003 order of dismissal.

THE COURT: I don't think the Court should be in a position of having to referee discovery in these types of cases. If there's an issue as to the complainant's psychological, alcohol, drugs, and that's supported by the record, I think the prosecutor has the onus to talk to their complaining witness and ... get to a point where your complaining witness understands that if she wants to continue being a complaining witness and wants you folks to prosecute a person for abusing her, she has some responsibility too. She can't hide behind [HIPAA] and medical psychological ... confidentiality, when have [sic] to balance the defendant's right to adequately cross-examine her.

[THE STATE]: There's no hiding behind [HIPAA]. As we put in our motion, there's permitted disclosure. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding in response to an order of the Court.

THE COURT: Or of the person's consent for release.

[THE STATE]: In response to a subpoena. Those are [sic] were available.

THE COURT: Well, and they were not honored. So as far as I'm concerned, [Derek] was ... hamstrung in his discovery.

Notwithstanding that, I'll stand by my finding and my order. I think it's in your ball park. You guys decide whether you want to pursue it, given the state of all the confidential records that ... [Sabina] doesn't want to disclose.

On October 15, 2003, the court entered the Amended Order of Dismissal on Defendant's Motion to Dismiss, Filed July 30, 2003. It stated, in relevant part, that "Item number 8 shall be stricken. In all other respects the Order of Dismissal remains unchanged."

Also, on October 15, 2003, the State filed its notice of appeal. Although it would have been clearer if the amended order of dismissal stated that "Item number 8 is hereby stricken[,]" it is appealable. See, *State v. Kalani*, 87 Hawai'i 260, 261, 953 P.2d 1358, 1359 (1998). This appeal was assigned to this court on September 20, 2004.

## POINTS OF ERROR

In this appeal, the State asserts the following two points of error:

A. *POINT OF ERROR 1:* The family court was wrong in dismissing case (rulings 5, 6 and 7) where less severe measures were available, and in concluding that defense could not prepare its case or receive a fair trial (COL 2, 4) based upon the erroneous findings that Complainant's medical records and answers to defense counsel's questions, which were declined based on her fifth amendment privilege, were relevant (FOF 1(a) and (b)).

B. *POINT OF ERROR 2:* The family court was wrong in dismissing the case (rulings 5, 6 and 7) and concluding that defense could not prepare its case or receive a fair trial (COLs 2 & 4), based upon the erroneous finding that the State has a "no bounce" policy (FOF 3), and wrongful conclusion that such a policy was the basis of the State's not dismissing the case (COL 3).

(Footnotes omitted.)

These points on appeal did not comply with all of the specific requirements of Hawai'i Rules of Appellate Procedure Rule 28(b)(4) (2005).[3]

## RELEVANT RULES

The Hawai'i Rules of Professional Conduct (2005) state, in relevant part, as follows:

**RULE 3.8 PERFORMING THE DUTY OF PUBLIC PROSECUTOR OR OTHER GOVERNMENT LAWYER**

A public prosecutor or other government lawyer shall:

**(a)** not institute or cause to be instituted criminal charges when [the prosecutor or government lawyer] knows or it is obvious that the charges are not supported by probable cause; and

**(b)** make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing,

---

**3.** Rule 28(b) of the Hawai'i Rules of Appellate Procedure (2005) states, in relevant part, as follows:

> **Opening brief.** Within 40 days after the filing of the record on appeal, the appellant shall file an opening brief, containing the following sections in the order here indicated:
>
> ....
>
> (4) A concise statement of the points of error set forth in separately numbered paragraphs. Each point shall state: (i) the alleged error committed by the court or agency; (ii) where in the record the alleged error occurred; and (iii) where in the record the alleged error was objected to or the manner in which the alleged

> error was brought to the attention of the court or agency. Where applicable, each point shall also include the following:
>
> ...;
>
> (C) when the point involves a finding or conclusion of the court or agency, a quotation of the finding or conclusion urged as error;
>
> ....
>
> Points not presented in accordance with this section will be disregarded, except that the appellate court, at its option, may notice a plain error not presented. Lengthy parts of the transcripts that are material to the points presented may be included in the appendix instead of being quoted in the point.

disclose to the defense all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal.

(Brackets in original.)

Hawai'i Rules of Penal Procedure (HRPP) Rule 48(a) (2005) states, in relevant part, "The prosecutor may by leave of court file a dismissal of a charge and the prosecution shall thereupon terminate."

## DISCUSSION

■ In this case, as indicated in the September 16, 2003 order of dismissal, the dismissal was based on two findings. The first finding was that Derek was being hamstrung in his discovery. Specifically, Derek was being hamstrung, in this family court criminal case against him, by Sabina's refusal to allow the release of her medical, psychological, and drug treatment records to him.

The first finding is not a valid basis for the dismissal of the complaint because Sabina's refusal to allow the release of her medical, psychological, and drug treatment records to Derek was not the cause of Derek's inability to obtain the release of those records. Edelman alleges that the cause was the court's off-the-record refusal of Edelman's request for an order compelling the release of those records. Whether that alleged cause was reversible error is not stated as a point of error in this appeal. Whether that alleged cause was plain error is not an issue in this appeal because that alleged cause was off the record.

■ The second finding was that Derek was being denied his right to adequately cross-examine Sabina. Specifically, Derek was being denied his right to adequately cross-examine Sabina by Sabina's assertion, in a family court non-criminal case involving Sabina, Derek, and their minor child, of her Fifth Amendment right to refuse to answer some of Edelman's pre-hearing discovery questions. The court concluded that this fact prevented Derek from being able to adequately prepare for trial in this family court criminal case, as well as receive a fair trial.

This second fact is not a valid basis for dismissing the complaint because Derek did not have a pre-trial right to interrogate Sabina. HRPP Rule 16(a) (2005) authorizes/mandates other kinds of discovery. Moreover, HRPP Rule 16(a) is expressly "limited to cases in which the defendant is charged with a felony[.]" An Abuse of a Family or Household Member charge is a misdemeanor. HRS § 709–906(5) (Supp.2004). Sabina's assertion, in a family court non-criminal case involving Sabina, Derek, and their minor child, of her Fifth Amendment right to refuse to answer some of Derek's pre-hearing discovery questions does not deny Derek of his right to prepare for trial in his family court criminal case.

■ Hawai'i precedent indicates that the applicable standard of review of the dismissal of a complaint is a deferential abuse of discretion standard (*State v. Mendonca*, 68 Haw. 280, 283, 711 P.2d 731, 734 (1985); *State v. Corpuz*, 67 Haw. 438, 440, 690 P.2d 282, 284 (1984); *State v. Pulawa*, 62 Haw. 209, 215, 614 P.2d 373, 377 (1980).) This precedent is supported by precedent in other states (*State v. Hadsell*, 129 Or.App. 171, 174–76, 878 P.2d 444, 446–47 (1994); *People v. Morrow*, 214 Mich.App. 158, 161–64, 542 N.W.2d 324 (1995); *State v. Sauve*, 164 Vt. 134, 140, 666 A.2d 1164 (1995); *State v. Michielli*, 132 Wash.2d 229, 239–40, 937 P.2d 587, 592–93 (1997); *State v. Brumage*, 435 N.W.2d 337, 341 (1989)). It appears that the amount of deference given depends on the reason(s) for the dismissal.

■ In contrast, federal precedent indicates that the applicable standard of review of the dismissal of a complaint is a non-deferential de novo (right/wrong) standard (*United States v. Rockwell Intern. Corp.*, 924 F.2d 928, 933 (9th Cir.1991); *United States v. Gurolla*, 333 F.3d 944, 950 (9th Cir.2003); *United States v. Bahena–Cardenas*, 70 F.3d 1071, 1072–73 (9th Cir.1995); *United States v. Williams*, 791 F.2d 1383, 1386 (9th Cir. 1986)).

In the instant case, under either standard of review, the result is the same.

Accordingly, we reverse the family court's October 15, 2003 Amended Order of Dismissal on Defendant's Motion to Dismiss, Filed July 30, 2003. We remand for further proceedings consistent with this opinion.