NO. 29500

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
ALOMALIETOA SUA, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 05-1-2647)

MEMORANDUM OPINION
(By: Nakamura, C.J., Fujise and Leonard, JJ.)

Defendant-Appellant Alomalietoa Sua (Sua) appeals from the Judgment filed on November 10, 2008, in the Circuit Court of the First Circuit (circuit court).[1] Sua was charged by indictment with second degree assault, in violation of Hawaii Revised Statutes (HRS) § 707-711(1)(a) (Supp. 2009).[2] A jury found Sua guilty as charged. The circuit court sentenced Sua to five years of imprisonment, with a mandatory minimum term of

---

[1] The Honorable Richard W. Pollack presided over the proceedings relevant to this appeal.

[2] HRS Section 707-711(1)(a) provides as follows:

**§ 707-711 Assault in the second degree.** (1) A person commits the offense of assault in the second degree if:

(a)    The person intentionally or knowingly causes substantial bodily injury to another.

HRS 707-700 (Supp. 2009) defines "substantial bodily injury" as follows:

"Substantial bodily injury" means bodily injury which causes:

(1)    A major avulsion, laceration, or penetration of the skin;

(2)    A burn of at least second degree severity;

(3)    A bone fracture;

(4)    A serious concussion; or

(5)    A tearing, rupture, or corrosive damage to the esophagus, viscera, or other internal organs.

three years and four months, and imposed the sentence to run consecutively to any other term Sua may be serving.

Sua was an inmate at the Halawa Correction Facility (Halawa) at the time of the charged assault. The alleged victim (AV) of the assault was also an inmate at Halawa. The charged assault was witnessed by an adult corrections officer through a security camera monitor and was captured on videotape. AV did not want to pursue the case and declined to testify or sign a release of his medical records due to fear of the possible repercussions. Nevertheless, Plaintiff-Appellee State of Hawai'i (State) decided to pursue prosecution, obtained AV's medical records and spoke to his doctor, and presented AV's medical information to the grand jury. After Sua was indicted, AV signed a release which authorized his doctors to disclose his medical information to the State and to testify in court.

On appeal, Sua asserts that: 1) the circuit court erred in denying Sua's motion to suppress evidence of AV's medical information on the ground that it was privileged; 2) the circuit court erred in denying Sua's motion to dismiss the indictment because the State committed prosecutorial misconduct in presenting AV's privileged medical information to the grand jury; 3) the Deputy Prosecuting Attorney (DPA) committed prosecutorial misconduct at trial by repeatedly asking improper hearsay questions designed to reveal AV's reasons for declining to pursue the case; and 4) the circuit court erred by instructing the jury on self-defense because the court improperly included instructions pertaining to the use of deadly force. We affirm.

BACKGROUND

I.

The charge in this case stems from an incident that occurred on August 12, 2003, after Sua and AV, both inmates at Halawa, were released into the recreational area. Initially, Sua and AV were "just talking story" and "playing handball." Then, they began to spar, which was not allowed at Halawa.

Adult Corrections Officer Shawn Colotario (Colotario) noticed the sparring on one of the monitors for the security cameras and alerted the control station closest to the

recreational area. Soon, Sua and AV were no longer simply sparring, but were fighting and attempting to hit each other. At one point, someone got their attention at a window to the recreational area, and Sua and AV turned toward the window. When they both turned, Sua punched AV on the back right side of his head, and AV fell face first onto the ground. AV appeared to be unconscious and was not moving or defending himself. Sua proceeded to kick and stomp on AV's head approximately 10 times.

Colotario described the stomps as "jump stomps" and the kicks as "hard", "field-goal type" kicks. He further stated that AV's body rolled over after one of the kicks, so that AV was facing upward, and that Sua continued to kick and stomp on AV's face. The entire incident was recorded by the security cameras. AV received medical treatment, first at Halawa and later at The Queen's Medical Center (Queens), where he was treated by Dr. Robert Duong (Dr. Duong).

The day after the incident, AV signed a Department of Public Safety form entitled "Withdrawal of Complaint and Release," in which AV stated that he did not want to testify in the case and that he released the State from all liability arising out of the dismissal of the charge. On September 2, 2003, AV told Special Agent Allen Napoleon (Agent Napoleon) of the Attorney General's Office "that he did not wish to give a statement nor sign his medical record release for fear of repercussions."

The Attorney General's Chief Investigator, Donald K.L. Wong (Investigator Wong), wrote a letter to the Halawa Custodian of Records dated September 9, 2003, requesting AV's medical records "in the [August 12, 2003,] assault case." On September 17, 2003, Agent Napoleon delivered the letter to the Halawa Custodian of Records and obtained a copy of AV's medical records, which included records from Queen's, concerning injuries sustained by AV on August 12, 2003. Agent Napoleon also spoke to Dr. Duong about AV's injuries.

II.

On December 15, 2005, the State sought an indictment from the grand jury against Sua. The State called Colotario who

3

testified that he witnessed Sua "falsecrack" AV on the back of the head and then kick and stomp on AV's head, while AV was not moving or defending himself. The State also called Agent Napoleon who testified that Dr. Duong stated that AV had "sustained a depressed right bone fracture in his nasal, and that also lacerations and penetration of the skin." The grand jury returned an indictment against Sua, which charged him with second degree assault for intentionally or knowingly causing substantial bodily injury to AV.

On June 15, 2006, Sua filed separate motions 1) to dismiss the indictment and 2) to suppress AV's medical records and testimony regarding AV's medical condition. Both motions were based on the ground that AV's medical information was protected by the physician-patient privilege set forth in Hawaii Rules of Evidence (HRE) Rule 504 (1993 & Supp. 2009). The State opposed both motions. On July 23, 2006, AV signed a "Consent to Disclose/Release Information" in which he authorized the doctors who treated him to 1) disclose medical records and information to the State and 2) testify in court regarding his evaluation, diagnosis, and treatment for the injuries he received at Halawa on August 12, 2003. The Consent to Disclose/Release Information provided that AV's authorization expired in one year.

On June 28, 2007, a hearing was held on Sua's motions.[3] The circuit court orally denied both motions and subsequently issued written findings of fact, conclusions of law, and an order denying both motions.

III.

During Sua's jury trial, the State called Colotario who testified about his observations through a surveillance camera monitor of the incident between Sua and AV in the recreation area. Colotario stated that he called down to have corrections officers intervene as he observed Sua and AV sparing and then engage in actual fighting. A corrections officer apparently got

---

[3] After Sua filed his motions, the proceedings were delayed by the appointment of examiners to determine Sua's fitness to proceed and his penal responsibility. The circuit court subsequently determined that Sua was fit to proceed.

Sua's and AV's attention at a window to the recreation area. As Sua and AV both turned and walked toward the window, Colotario saw Sua punch AV in the back of the head. AV fell face first onto the ground and did not move or try to get up. Colotario testified that Sua kicked and stomped on AV's head approximately ten times, using "field-goal type" kicks and "jump stomps." Eventually, corrections officers entered the recreation area and tackled and restrained Sua.

The State introduced the video recording of the incident between Sua and AV in evidence and played the recording for the jury. The recording is consistent with Colotario's account. It shows Sua and AV sparring and then engage in more serious boxing in which they attempt to hit each other. Neither Sua nor AV appear to be hurt when they stop fighting and turn to walk toward a window to the recreation area. At that point, Sua hits AV in the head from behind causing AV to fall to the ground. Sua then repeatedly kicks and stomps on AV's head while AV is lying on the ground, without moving or attempting to defend himself.

The State introduced photographs taken right after the incident which showed lacerations and swelling to, and blood and bruises on, AV's face and head. The State also called Dr. Duong who testified that AV sustained fractures of the nasal bone on the right side, lacerations on the left side of his face and around the left eye, and soft tissue swelling around the face and head.

DISCUSSION

I.

Sua argues that the circuit court erred in denying his motions to suppress AV's medical information and to dismiss the indictment. We disagree.

A.

In the circuit court, Sua moved to suppress evidence regarding AV's medical information and to dismiss the indictment on the ground that AV's medical information was protected by the physician-patient privilege set forth in HRE Rule 504. In its written decision, the circuit court denied both motions,

5

concluding that Sua lacked standing under HRE Rule 504 to assert the physician-patient privilege on behalf of AV with respect to the State's use of AV's medical information at the grand jury proceeding or at trial. The circuit court further concluded that by executing the Consent to Disclose/Release Information, AV waived his privilege to refuse to disclose his medical information and ratified the production of this information to the State. We agree with the circuit court's analysis.

We conclude that the circuit court properly denied Sua's motions to dismiss the indictment and suppress evidence because Sua lacked standing under HRE Rule 504 to assert the physician-patient privilege on behalf of AV. HRE Rule 504(c) provides that the physician-patient privilege may only be claimed by "the patient, the patient's guardian or conservator, or the personal representative of a deceased patient." The physician at the time of the communication is also "presumed to have authority to claim the privilege, but only on behalf of the patient." HRE Rule 504(c). The commentary to HRE Rule 504 states that "the privilege belongs only to the patient . . . ."

Courts from other jurisdictions have concluded that a criminal defendant does not have standing to assert the physician-patient privilege to prevent the prosecution from introducing evidence regarding a victim's medical condition at trial. E.g. State v Miles, 123 P.3d 669, 674 (Ariz. Ct. App. 2005) (concluding that the defendant could not invoke the physician-patient privilege on the victim's behalf and thereby "immunize himself from prosecution for injuring the victim" (internal quotation marks omitted)); State v. Evans, 802 S.W.2d 507, 511 (Mo. 1991) (en banc) ("[A] defendant in a criminal prosecution cannot claim physician-patient privilege to bar testimony from the victim's treating physician."); State v. Gillespie, 710 N.W.2d 289, 297 (Minn. App. 2006) ("Because the privilege belongs to the patient, no person other than the patient has standing to assert the privilege."). The defendant's lack of entitlement or standing to assert the victim's physician-patient privilege also applies to grand jury proceedings. See In re Grand Jury Proceedings, 437 N.E.2d 1118, 1120 (N.Y. 1982).

In analogous circumstances, the Hawai'i and the United States Supreme Courts have concluded that a criminal defendant is not entitled to the suppression of evidence obtained by the government in violation of a third party's constitutional rights. See State v. Tau'a, 98 Hawai'i 426, 438-39, 49 P.3d 1227, 1239-40 (2002) ("[A]llowing a defendant charged with a possessory offense to avail himself or herself of the exclusionary rule as a function of the violation of a third party's constitutional rights would produce absurd results."); United States v. Payner, 447 U.S. 727, 731-32(1980) (concluding that a defendant, whose own legitimate expectation or privacy was not invaded, lacks standing under the Fourth Amendment to suppress evidence illegally seized from a third person).

In addition, as the circuit court concluded, AV waived any physician-patent privilege by executing the Consent to Disclose/Release Information. Sua notes that the Consent to Disclose/Release Information provided that Sua's authorization to disclose his medical information expired in one year and that the trial took place more than one year later. However, the waiver of the privilege cannot be revoked once the privileged information is disclosed; this is because the privilege only protects confidential information and disclosed information is no longer confidential. See HRE Rule 511 (1993); Cline v. William H. Freedman & Associates, 882 S.W.2d 754, 761 (Mo. Ct. App. 1994); Driskell v. State, 659 P.2d 343, 351 (Ok. Ct. Crim. App. 1983). AV's waiver, through his execution of Consent to Disclose/Release Information, applied to permit disclosure of his medical information at trial. Moreover, as the circuit court ruled, this waiver also served to ratify the disclosure of AV's medical information to the State prior to the grand jury proceeding. Accordingly, because Sua lacked standing to assert any physician-patient privilege on AV's behalf and because AV waived any privilege he had, the circuit court properly denied Sua's motions to dismiss the indictment and to suppress evidence.

B.

On appeal, Sua argues that the circuit court erred in failing to dismiss the indictment because the State's use of AV's

7

privileged medical information in the grand jury constituted prosecutorial misconduct. In the circuit court, Sua sought dismissal of the indictment on the ground that AV's medical information, which was introduced during the grand jury proceeding, was protected by the physician-patient privilege. Sua, however, did not seek dismissal of the indictment on the ground of prosecutorial misconduct.

Because Sua did not argue that the indictment should be dismissed for prosecutorial misconduct in the circuit court, we need not consider this new argument on appeal. See State v. Sunderland, 115 Hawai'i 396, 399, 168 P.3d 526, 529 (2007) (plurality opinion) ("[I]nasmuch as [defendant] did not raise his right-to-privacy argument before the trial court, we do not address it."); HRS § 641-2 (Supp. 2009) ("The appellate court . . . need not consider a point that was not presented in the trial court in an appropriate manner."); State v. Naeole, 62 Haw. 563, 570, 617 P.2d 820, 826 (1980)(citing the established general rule that "an issue raised for the first time on appeal will not be considered by the reviewing courts").

Even assuming arguendo that Sua is entitled to raise this claim of prosecutorial misconduct on appeal, we reject it. In State v. Pulawa, 62 Haw. 209, 614 P.2d 373 (1980), the Hawai'i Supreme Court adopted the rule that:

> Unless the prosecutor's misconduct before a grand jury is extreme and clearly infringes upon the jury's decision-making function it should not be utilized as a stepping stone to dismissal of an indictment. As has often been observed, an indictment should only be quashed on the clearest and plainest grounds.

Id. at 217, 614 P.2d at 378 (internal quotation marks omitted).

Here, because Sua lacks standing to assert the physician-patient privilege on AV's behalf, it follows that Sua cannot rely on the claimed violation of AV's privilege as the predicate for his prosecutorial misconduct claim. AV subsequently waived his privilege, thereby ratifying the prior disclosure of his medical records. The medical information for AV that was presented to the grand jury was reliable, and Sua does not question its trustworthiness. Under these circumstances, we conclude that the alleged misconduct of the

8

State in conducting the grand jury proceeding was not extreme and did not clearly infringe upon on the grand jury's decision-making function. See id.

Moreover, the guilty verdict subsequently returned by the petit jury at trial rendered the alleged defect in the grand jury proceeding moot or harmless error. See In re Doe, 102 Hawai'i 75, 78, 73 P.3d 29, 32 (2003) ("[A]bsent unusual circumstances, any defects in a pretrial determination of probable cause are rendered moot, or are without any effective remedy, which is much the same thing, by a subsequent conviction." (footnote omitted)); United States v. Mechanik, 475 U.S. 66, 70-73 (1986) (holding that the petit jury's guilty verdict rendered the alleged defect in the grand jury proceeding harmless beyond a reasonable doubt).[4]

II.

Sua argues that the DPA committed prosecutorial misconduct by repeatedly asking improper hearsay questions designed to reveal AV's reasons for declining to pursue the case. On cross-examination of Agent Napoleon, Sua asked whether VA wanted to pursue the case. Agent Napoleon responded, "At that point, [AV] told me he did not want to give a statement, and also that the reason is because it would cause more problems at Halawa." On redirect, the DPA asked Agent Napoleon a series of questions regarding what AV had said about why AV did not want to pursue a complaint against Sua. The circuit court sustained Sua's objections on the ground of hearsay to these questions. The State's questions culminated in the DPA asking, "And was it because [AV] felt that Sua would find out through the grapevine and cause problems for [AV]?" The circuit court also sustained Sua's hearsay objection to this question.

_____

[4] In light of our analysis, we need not address the State's arguments that the use of AV's medical information in the grand jury proceeding did not constitute prosecutorial misconduct because 1) the State's need for AV's medical information to pursue prosecution against Sua trumped any physician-patient privilege held by AV; and 2) the State obtained AV's medical information pursuant to regulations under the federal Health Insurance Portability and Accountability Act of 1996.

We conclude that after the circuit court had sustained Sua's hearsay objections to the DPA's questions, it was improper for the DPA to persist in seeking to reveal AV's hearsay statements through the DPA's questioning of Agent Napoleon. Although we conclude that the DPA's conduct constitutes "prosecutorial misconduct,"[5/] we hold that it was harmless beyond a reasonable doubt.

"Allegations of prosecutorial misconduct are reviewed under the harmless beyond a reasonable doubt standard" to determine whether, based on the record, "there is a reasonable possibility that the error complained of might have contributed to the conviction." State v. Maluia, 107 Hawai'i 20, 24, 108 P.3d 974, 978 (2005) (internal quotation marks omitted). In conducting this analysis, we consider "(1) the nature of the conduct; (2) the promptness of a curative instruction; and (3) the strength or weakness of the evidence against the defendant." Id. (internal quotation marks omitted). In this case, the most significant factor in our analysis is the strength of the evidence against Sua.

The State presented overwhelming evidence that Sua was guilty of the charged second degree assault. The video recording of the charged incident, which was admitted in evidence and played for the jury, showed that Sua attacked AV from behind, then repeatedly kicked and stomped on AV's head while AV lay defenseless, seemingly unconscious, on the ground. The photographs of AV's face and head and the undisputed medical testimony of Dr. Duong established that AV had sustained substantial bodily injury.

With respect to the other factors, although the DPA's conduct was improper, it was not egregious. In addition, the circuit court's actions in sustaining Sua's objections served as a substitute for a curative instruction and diminished the effect of DPA's improper questioning. Under the circumstances of this

---

[5/] In State v. Maluia, 107 Hawai'i 20, 25, 108 P.3d 974, 979 (2005), the Hawai'i Supreme Court stated that "[t[he term 'prosecutorial misconduct" is a legal term of art that refers to *any* improper action committed by a prosecutor, however harmless or unintentional."

case, we conclude that there is no reasonable possibility that the DPA's improper questioning might have contributed to Sua's conviction. See id. at 27, 108 P.3d at 981.

III.

Sua argues that because he was only charged with second-degree assault, the circuit court erred by giving the jury a self-defense instruction that included an instruction pertaining to the use of deadly force in self-defense. We disagree.

The term "deadly force" for purposes of the law on self-defense "means force which the actor uses with the intent of causing or which the actor knows to create a substantial risk of causing death or serious bodily harm." HRS § 703-300 (1993). Thus, "deadly force" depends upon the intent of the actor, and the use of force can constitute deadly force even if there is no resulting injury. The second degree assault with which Sua was charged requires proof that the defendant actually caused substantial bodily injury to another. See HRS § 707-711(1)(a). A person who commits the crime of second degree assault in violation of HRS § 707-711(1)(a) can use deadly force. Therefore, contrary to Sua's claim, there was no inconsistency or impropriety in the circuit court's including a deadly force instruction in instructing the jury on self-defense in the prosecution of Sua for second degree assault.

As the circuit court found, there was evidence to support a finding by the jury that Sua had used deadly force. Thus, the circuit court did not err in including an instruction pertaining to the use of deadly force in instructing the jury on self-defense.

In any event, any alleged error in the circuit court's self-defense instructions was harmless beyond a reasonable doubt. As noted, the video recording of the charged incident provided overwhelming evidence that Sua had not acted in self-defense when he hit AV from behind and kicked and stomped on AV's head while AV was lying on the ground.

CONCLUSION

For the foregoing reasons, we affirm the November 10, 2008, Judgment of the circuit court.

DATED:   Honolulu, Hawaiʻi, April 29, 2010.


On the briefs:
Cynthia A. Kagiwada
for Defendant-Appellant.

Debbie L. Tanakaya,
Deputy Attorney General
for Plaintiff-Appellee.

*Craig H. Nakamura*

Chief Judge


Associate Judge


Associate Judge

12